Courtney v. Blackwell.

---

COURTNEY v. BLACKWELL, Appellant.

In Banc, May 30, 1899.*

1. **Equity**: FINDINGS: REVIEW. The appellate court, where all the evidence in an equity case is before it, is not confined to the special finding of facts by the chancellor, but will review the evidence and arrive at its own conclusions upon the facts.

2. ———: ACTIONS: RELEASE: KNOWLEDGE BY PLAINTIFF OF EVIDENCE. It does not follow because a plaintiff has brought a suit for slander, that she knew what she could establish by proof.

3. ———: ———: ———: ———: FRAUD. So where plaintiff has been induced by defendant without any adequate consideration, to sign a dismissal of the suit, and a release of all further claims for the slander, in the absence of her attorney, and in the presence of his counsel who has been represented to her by defendant as a disinterested party, induced so to do by his solemn disavowal that he had ever uttered the slanderous words, and by his misrepresentations as to the character of the person who claimed he had uttered them to him and by his frequent avowal of his friendship for her and her family, he having been her teacher, the release will be held to have been obtained through fraud.

4. ———: ———: ———: ———: ———: AFFIRMANCE. And where under such circumstances he presents her with a written disavowal which is one of the considerations of the release, but which was not to be published, but in a few days he gave her another paper which exonerated her from any participation in a certain larceny, and she had the same published, but before she had done so she had heard of some of his admissions and utterances which shook her confidence in the integrity of his disavowal, there has not been an affirmance of the release by her.

*NOTE.—Decided March 28, 1899.   Rehearing denied May 30.

5. **Actions**: LIMITATIONS: PLEADINGS. Where in an action at law for damages in a slander suit, an equitable defense was set up in a replication, which, under the rulings of this court in the same case, was afterwards embodied as a separate count in an amended petition, the defense is not barred by the statute of limitations, although five years had expired at the time the amended petition was filed. Such amended petition did not set up a new claim not before asserted.

    *Held* by VALLIANT, J., in separate opinion, that, as this was originally a suit at law for slander, and defendant's answer set up a written release of all claim for damages, to which plaintiff replied alleging the release to be fraudulent and void, and this reply the defendant moved to strike out on the ground "that it attempts to raise issues triable solely in a court of equity," which motion the court overruled, and the defendant then demanded that the issue of fraud be tried by the court, but the whole case was submitted to a jury, and the Supreme Court on appeal held that the question of whether the release was obtained through fraud was triable by the equity side of the court, and when the case was remanded the plaintiff in a separate count of the amended petition alleged the giving of the release and charged it to have been obtained through fraud, to which count defendant pleaded the statute of limitations—then under these circumstances, the amendment to the petition was the addition of a new cause of action thereto, and as five years had elapsed since the release was made the plea of the statute of limitations to such count ought to prevail.

    *Held* by MARSHALL, J., in separate opinion, that the former opinion in this case was wrong in holding that the issue of fraud in the procurement of the release by defendant of plaintiff's claim for damages, could not be raised in a reply to the answer setting up the release. (GANTT, C. J., SHERWOOD and BRACE, JJ., concur.)

6. ——: DISMEMBERMENT. Under the statute an action can not be dismembered, whereby a part of it may be pending in the appellate court, while the other part is pending in the trial court. So that where plaintiff's petition contains two counts, the first of which sounds in equity and in which it is prayed that a certain release of a slander may be declared fraudulent and be set aside, in order that plaintiff may proceed to trial under the second count and recover the damages therein claimed for said slander, and there is judgment on the first count, it is not proper to delay the trial on the second count till defendant can appeal. The entrance of such a judgment is premature, but not prejudicial to the rights of defendant.

7. ——: RELEASE: INSTRUCTION. And where the defendant offers such release in evidence, it is not error for the court to instruct the jury that the same had been set aside by the court, and was no bar to plaintiff's recovery.

8. **Evidence**: INFORMATION: HEARSAY.  It is proper to permit a witness to say he had gotten certain information from persons other than the parties to the suit, and from whom, but it is not proper to permit him to detail any conversation with his informant.

9. **Slander**: DAMAGES: LUMP VERDICT.  Where the jury is properly instructed as to actual damages for the publication of a slander, and as to exemplary damages if the slander had been wantonly and maliciously done, and there is no separate finding of actual damages, but the jury return a lump sum, according to the form of an instruction, as exemplary damages, the error will be held to be one of form rather than of substance, and the award being reasonable and just the judgment will stand.

*Appeal from Boone Circuit Court.—*HON. JOHN A. HOCKADAY, Judge.

AFFIRMED.

TURNER & HINTON and C. B. SEBASTIAN for appellant.

(1) The facts set forth in the special findings of the trial court, viz., that the defendant falsely denied having made the slanderous charges, and thereby induced the plaintiff to dismiss her original suit and enter into the settlement, are not sufficient to justify the setting aside of the release. The plaintiff, having brought an action against the defendant for the publication of this slander, knew what she could establish by proof on this subject, and hence can not now complain of his denial of the publication as fraudulent. Quinlan v. Keiser, 66 Mo. 603; Powell v. Adams, 98 Mo. 598; Sachleben v. Heintze, 117 Mo. 520; Morgan v. Joy, 121 Mo. 667; Lewis v. Land Co., 124 Mo. 672; Ordway v. Ins. Co., 35 Mo. App. 424. (2) By retaining the benefits arising from the settlement, and, after she had full knowledge of the alleged fraud, by obtaining from the defendant a full written statement of exoneration on the faith of the compromise, which she thereafter caused to be published to her use in the newspapers, the plaintiff acquiesced in and ratified the

release, so as to preclude her from disaffirming it. Hart v. Handlin, 43 Mo. 171; Nauman v. Oberlee, 90 Mo. 666; Crumb v. Wright, 97 Mo. 13; Taylor v. Short, 107 Mo. 384; Lewis v. Land Co., 124 Mo. 672. (3) The equity count of the present amended petition, seeking to set aside the release, sets up a new cause of action, wholly different from any previously asserted, against which the statute of limitations had fully run before the amendment was filed. Such new cause of action was therefore barred. Railroad v. Wyler, 158 U. S. 285; Eylenfeldt v. Steel Co., 46 N. E. 266; Fish v. Forwell, 43 N. E. 367; Hawley v. Simons, 41 N. E. 616; Blake v. Minkner, 36 N. E. 246; Railroad v. Schraeder, 44 Pac. 1093; Parsons Water Co. v. Hill, 26 Pac. 412; Jones v. Bull, 36 S. W. 501; Coal Co. v. Broyle, 32 S. W. 761; Sams v. Price, 28 S. E. 486; Railroad v. Ledbetter, 9 So. 73; Smith v. Railroad, 50 Fed. 760; Baker v. Railroad, 34 Mo. App. 98; Phillips v. Broughton, 30 Mo. App. 148; Sims v. Field, 24 Mo. App. 557; R. S. 1889, sec. 6775; Thomas v. Mathews, 51 Mo. 107; Hyatt v. Wolfe, 22 Mo. App. 191. (4) The pendency of a motion for a new trial on the equity count of the petition suspended the decree setting aside the release. The court, therefore, erred in forcing the defendant to trial on the second count pending such motion, and in excluding the release as a defense to such action. Riddlesbarger v. McDaniel, 38 Mo. 138; Stephens v. Brown, 56 Mo. 23; Thomas v. Thomas, 64 Mo. 353; State ex rel. v. Philips, 96 Mo. 570; Scott v. Scott, 44 Mo. App. 600; State ex rel. v. Kempff, 62 Mo. App. 332. (5) The court erred in permitting the witness Clinkscales to testify as to the substance of a conversation between himself and Purinton, when the defendant was not present, touching certain statements which Purinton reported that defendant had made to him. This was clearly hearsay and incompetent for any purpose. Wood v. Hicks, 36 Mo. 326; Langsdorf v. Field, 36 Mo. 440; O'Neil v. Crane, 67 Mo. 250; Goltz v. Griswald, 113 Mo.

144. (6) In the absence of any allegation in the petition on the subject, it was error to permit the plaintiff to testify, over defendant's objection, that she had been refused employment as a teacher on account of this charge. This was a matter of special damage. Hatt v. News Association, 54 N. W. 766; Holston v. Boyle, 49 N..W. 203; Heiser v. Loomis, 10 N. W. 60; Tomlinson v. Derby, 43 Conn. 562; Nicholson v. Rogers, 129 Mo. 136; Coontz v. Railroad, 115 Mo. 672; Mellor v. Railroad, 105 Mo. 455; Herman v. Bradstreet, 19 Mo. App. 227; 2 Greenl. on Evid. (14 Ed.), sec. 420. This error was not harmless because the verdict purports to award only punitive damages. (7) The fourth instruction on behalf of the plaintiff, by which the jury were told that the law presumed that the person uttering the defamatory words intended maliciously to injure the person concerning whom they were spoken, unless the contrary appeared from the circumstances or occasion of the publication, invaded the province of the jury, and decided the whole question of punitive damages against the defendant. Morton v. Heidorn, 135 Mo. 608; Payne v. Railroad, 129 Mo. 405; Schepers v. Railroad, 126 Mo. 665; Bluedorn v. Railroad, 121 Mo. 258; Moberly v. Railroad, 98 Mo. 183. (8) The sixth instruction given by the court, at the instance of the plaintiff was clearly erroneous, and moreover was calculated to mislead and prejudice the jury. It is in part as follows: "The court instructs the jury that the release set out in defendant's answer having been set aside and for naught held by the court constitutes no bar to the plaintiff's right of recovery in this action." The ruling of the court on the trial in rejecting the release as evidence, was an emphatic declaration that there was no issue before the jury as to the effect or even the existence of the release. This instruction is a gratuitous calling of the attention of the jury to a fact, an· issue, and a defense already wholly excluded from their consideration. Iron Mountain Bank v. Murdock & Armstrong,

62 Mo. 73; Camp, Adm'r, v. Heelan, 43 Mo. 592. (9) Exemplary damages are based on actual damages and can not be awarded without real and actual damages as a foundation. Adams v. City, 48 Pac. 918; Shippel v. Norton, 16 Pac. 804; Carson v. Instalment Co., 34 S. W. 762; Giraud v. Moore, 26 S. W. 945; Jones v. Mathews, 12 S. W. 823; Kuhn v. Railroad, 37 N. W. 116; Stacey v. Pub. Co., 68 Me. 279; Gilmore v. Mathews, 67 Me. 517; Maxwell v. Kennedy, 50 Wis. 64; Garsly v. Perkins, 30 Mich. 493; Meidel v. Anthis, 71 Ill. 241; Boardman v. Gro. Co., 75 N. W. 343.

ODON GUITAR, WEBSTER GORDON and W. M. WILLIAMS for respondent.

(1) The facts set forth in the finding of the trial court are sufficient to sustain its decree setting aside the release. (a) This court is not bound by the special finding of facts by the trial court, but in the exercise of its jurisdiction should, and will examine the whole record, and arrive at its own conclusion upon the facts adduced in testimony. Parker v. Vanhoozer, 142 Mo. 621; Hartley v. Hartley, 140 Mo. 216; Benne v. Schnecko, 100 Mo. 250. (b) The testimony amply justified the decree of the lower court setting aside and cancelling said release. Hancock v. Blackwell, 139 Mo. 455; Ins. Co. v. Naugle, 29 N. E. 395; Berry v. Ins. Co., 132 N. Y. 54; Bussian v. Railroad, 14 N. W. 456; Headley v. Hackley, 14 N. W. 453; Watkins v. Brandt, 1 N. W. 82; Johnson v. Railroad, 77 N. W. 476. (2) There was no acquiescence or ratification of the settlement after the reiteration of the slander by the defendant. The testimony shows that from that moment all communication and friendly relations ceased between the parties and their families. Plaintiff repudiated the release as soon as she was advised of the fraud, and at once instructed her counsel to reinstitute her suit, which was done at the October term of the Boone circuit court, 1892. Hancock v. Blackwell, 139 Mo. 440. The

rulings made on a former appeal are the law of the case when it comes before this court on a second appeal. Bevis v. Railroad, 30 Mo. App. 564; Baker v. Railroad, 34 Mo. App. 98; Grundy v. Webb, 48 Mo. 563; Nat. Bank v. Taylor, 62 Mo. 338; Chouteau v. Gibson, 76 Mo. 38. (3) Where the "amendment sets up no new matter or claim, but is a mere variation of the allegations affecting a demand already in issue, then the amendment relates to the commencement of the suit, and the running of the statute is arrested at that point." Buel v. Transfer Co., 45 Mo. 562; Crocket v. Transfer Co., 52 Mo. 457; Lottman v. Barnett, 62 Mo. 159; Lilly v. Tobbein, 103 Mo. 477. (a) The amendment to the petition introduced no new cause of action. Said release, and its fraudulent procurement have been in issue between the parties since the commencement of this suit. The facts pleaded in the amended petition for the purpose of avoiding the release are precisely the same as those relied upon in former pleadings for that purpose. Defendant has been fully informed by the pleadings, from the very beginning of the action, of the grounds relied upon for the cancellation of said instrument. The only purpose of the amendment was to plead, in legal and proper form, facts formerly set up. A change was made in the form of the pleadings but not in the allegations relied upon to secure the relief granted by the lower court. Dane v. McClure, 39 Va. 197; Miller v. Watson, 6 Wend. 506; Daly v. Gates, 65 Vt. 591; Long v. Long, 141 Mo. 368; 1 Ency. of Pleading and Practice, p. 518. (b) This court, when the case was here before, declared that the plaintiff was entitled to amend her petition so as to embrace a count to set aside the release. This, in effect, amounted to a ruling that such an amendment would not introduce a new cause of action. If this amendment was in effect the beginning of a new suit it would not have been authorized by this court. Wade v. Clark, 2 N. W. 581. (c) Again, the first count of the petition does not set up an independent cause

of action.  It is merely a proceeding in equity to remove a barrier out of the way of the prosecution of an action at law upon the facts pleaded in the second count.  The question, under the authorities cited, resolves itself into the simple proposition did the amendment introduce a "new issue" into the case, if it did not then it set up no "new cause of action." Amendments are allowed expressly to save the cause from the statute of limitations.  Lilly v. Tobbein, 103 Mo. 490; Lottman v. Barnett, 62 Mo. 159; Bender v. Zimmerman, 135 Mo. 53; Leise v. Myer, 143 Mo. 547; Walser v. Wear, 141 Mo. 443; Scovill v. Glasner, 79 Mo. 449.  (4)  Beyond all we have said, however, the question of limitations in the case is concluded absolutely by the provisions of section 6784, R. S. 1889.  If it were even considered for the sake of argument, that the filing of the amended petition was the commencement of a "new action," such "new action" was commenced, as the record shows, within one year after the case was reversed by this court.  The cause was reversed on June 8, 1897, and the amended petition was filed in the Boone circuit court on October 1, 1897.  R. S. 1889, sec. 6784; Hancock v. Blackwell, 139 Mo. 440; Karnes v. Ins. Co., 144 Mo. 413, 419; Long v. Long, 141 Mo. 352, 370; Chouteau v. Rowse, 90 Mo. 191; Gerron v. Railroad, 60 Mo. 405.  (5) Appellant's contention that he was entitled to a continuance on the second count of the petition, is unsupported by the authorities he has cited, and conclusively refuted by his own reasoning.  Appellant filed no motion, and alleged no reason why the court should continue the case and not proceed to the trial of the case on the second count of the petition. R. S. 1889, sec. 2134; Needles v. Burk, 98 Mo. 474; Mc-Farland v. Railroad, 125 Mo. 253.  (6)  In all cases where wantoness, recklessness, oppression or express malice has been shown, the jury is allowed to award exemplary damages, not only to compensate the sufferer, but to punish the offender.  Carson v. Smith, 133 Mo. 606; Franz v. Hilter-

brand, 45 Mo. 121; Engle v. Jones, 51 Mo. 316; Magon v. Lurfer, 69 Mo. 469; Fulkerson v. Murdock, 53 Mo. App. 151; Callahan v. Ingram, 122 Mo. 355; Buckley v. Knapp, 48 Mo. 161; Clements v. Malony, 55 Mo. 359. The rule announced by recent decisions of this court is that it lies in the discretion of the jury as to whether punitive damages will be allowed in any case, and is not a question for the court. Carson v. Smith, 133 Mo. 606; Callahan v. Ingram, 122 Mo. 372; Nicholson v. Rogers, 129 Mo. 136. (7) Defendant is in no position to complain of the form of the verdict. The finding of the jury established the utterance of the slander by him, and that it was done maliciously. The law implies actual damages to plaintiff from this slander. The verdict, therefore, established the proposition that plaintiff sustained actual damages, because it found facts to exist from which, as a matter of law, actual damages are implied. (a) It does not lie in the mouth of defendant to complain that the actual damages to which plaintiff was legally entitled, were not awarded, in addition to the exemplary damages assessed by the jury. Alderman v. Cox, 74 Mo. 78; Gifford v. Weber, 38 Mo. App. 595. (b) In as much as the law implies actual damages to plaintiff from the facts found by the verdict, there was no error in assessing exemplary damages, upon the further finding that defendant's conduct was wanton and malicious. If the plaintiff sustained actual damages, and the finding of the jury as a matter of law is sufficient to establish that fact, then punitive damages may be awarded although substantial actual damages were not assessed by the jury. Press Pub. Co. v. Monroe, 38 U. S. App. 418; Furgerson v. Evening Chronicle Pub. Co., 72 Mo. App. 462; Favorite v. Cottrell, 62 Mo. App. 119; 1 Sedwick on Damages (8 Ed.), 361; Railroad v. Sellers, 93 Ala. 9; Hefley v. Baker, 19 Kan. 9; Wilson v. Vaughn, 23 Fed. 229; Van Inglen v. Star Co., 37 N. Y. Sup. 114; Prince v. Brooklyn, 37 N. Y. 250.

BRACE, J.—This is an appeal from a decree and judgment of the circuit court of Boone county in which the pleadings, finding, decree and judgment are as follows:

### PETITION.

"In the Circuit Court of Boone County, Missouri, June Term, 1897. Etta Courtney, nee Hancock, plaintiff, vs. James S. Blackwell, defendant.

"Plaintiff for her second amended petition, leave of court being first had and obtained, states that heretofore, to wit, on or about the 12th day of January, 1892, at the county of Boone and State of Missouri, it having been reported to E. C. Clinkscales, then marshal of the city of Columbia, in the State and county aforesaid, that a larceny of $30 or upwards had been committed in the dwelling house of one George D. Purinton, in said city, the said Clinkscales was approached by the defendant, who then and there entered into a conversation with said Clinkscales concerning said larceny, and the defendant did, then and there, in the presence and hearing of the said E. C. Clinkscales, maliciously, falsely and wantonly speak and publish of and concerning plaintiff, the following false and slanderous words, that is to say:   'Purinton and I have talked that matter all over, and I told him that I knew that girl (meaning the plaintiff) had taken that money the minute I heard of its disappearance; that everywhere she goes money disappears. She is an adventuress of the first water, and destined to become a noted crook,' then and there intending to charge and impute, and then and thereby falsely and maliciously charging and imputing to plaintiff the crime of larceny in a dwelling house as aforesaid, and then and there being so understood by the said E. C. Clinkscales as imputing to and charging the plaintiff with the crime of larceny in a dwelling house as aforesaid, and that by reason of said slanderous

Courtney v. Blackwell.

charge so uttered and published of and concerning plaintiff by the defendant, she sustained damages in the sum of $25,000, and for which amount she instituted suit in the circuit court of Boone county, Missouri; that while said suit was pending and undetermined, and prior to the institution of this action, and on the 5th day of April, 1892, the defendant fraudulently procured and induced the plaintiff to execute and deliver to him a release in writing, releasing and acquitting him from any and all liability for the damages sustained by plaintiff by reason of the aforesaid slander so uttered and published by him, and which said release is in words and figures as follows, to wit:

" 'In the circuit court of Boone county. Etta Hancock, plaintiff, vs. James S. Blackwell, defendant.

"Whereas, the plaintiff instituted in the circuit court of Boone county, an action against the defendant for damages, charging him with saying of and concerning her, that he knew plaintiff had taken money, that money disappears wherever she goes, and that she was an adventuress, and was destined to become a noted crook. And whereas defendant denies having uttered said words concerning plaintiff. Now, therefore, in consideration of the written retraxit this day delivered by defendant to plaintiff, and the sum of $10 for payment of court costs incurred up to date in said case, the said Etta Hancock, by these presents agrees to withdraw said suit, and to give a written order to the clerk of the court for dismissal of the same from the docket, and she further agrees to quit and discharge said Blackwell from all liability for and on account of the charges made in said suit, and by these presents does acquit, discharge and release said Blackwell from any and all liability for and on account of the words and charges contained in said suit, and any other words and charges of and concerning the plaintiff up to this date, to the end that all actions and causes of action for words uttered and published heretofore shall be and the same are hereby settled,

released and discharged forever as against said Blackwell, defendant as aforesaid. Witness my hand, this 5th day of April, 1892. Etta Hancock.
" 'Witness: Mrs. T. J. Hancock.'

"Plaintiff further states that the defendant induced her to sign said release by his false and fraudulent representations and wrongful conduct; that several years prior to the date of said release, plaintiff's mother removed from her farm in Chariton county to reside temporarily at Columbia, for the purpose of educating the plaintiff and her sisters at the State University, and to enable the plaintiff to pursue a post-graduate course in said institution and qualify herself as a teacher; that the plaintiff's father remained upon his farm in Chariton county; that during part of the time plaintiff was attending the University, defendant was one of the professors thereof and an instructor of plaintiff; that the family of the plaintiff and that of the defendant, until the time hereinafter indicated, were upon the most friendly and intimate terms; that the defendant professed great friendship for the plaintiff, and that as her teacher, she looked to him for advice and was accustomed to follow his directions; and that he claimed to be a special friend of her family and plaintiff's mother and sisters, prior to the utterance of the language aforesaid, regarded defendant as a special friend, adviser and counsellor; that the plaintiff's mother, in view of the professed friendship of the defendant for the plaintiff and her family, did not believe that defendant had spoken the slanderous words hereinbefore set out about the plaintiff, and that defendant had great influence over the mother of the plaintiff, to whom he well knew plaintiff looked for advice, and by whom she would be governed in reference to the prosecution of her suit against him for damages for said slander, which was then pending in the circuit court of Boone county; that said defendant, knowing that he was guilty of the utterance of

said slander and intending fraudulently and by means of artifice and undue influence to procure a dismissal of said suit, and a release from the plaintiff of the damages for which he was liable, and well knowing that he had spoken of and concerning the plaintiff the aforesaid false and slanderous words and had intended to charge, and had been understood as charging, that plaintiff was guilty of larceny and had given currency to said false and malicious statements about the plaintiff, and that she had been greatly injured thereby and had a cause of action against him therefor, did in order to fraudulently induce plaintiff's mother to use her influence with plaintiff to procure the aforesaid release, and in order to secure from plaintiff the settlement and dismissal of said suit, falsely state to plaintiff's mother, to be communicated to plaintiff, that he had never at any time uttered or spoken the slanderous words abovementioned, or any words of similar import about the plaintiff, and did, with full knowledge that such statements were false, in a most solemn manner, call upon 'God to strike him dead' if he had ever made any such charge against the plaintiff; that he used said expression for the purpose of impressing upon plaintiff the truth of his said utterance, although he well knew at the time that his said statement was false, but he fraudulently intended to make plaintiff believe that the same was true, so as to procure the release aforesaid from her; that in furtherance of his said fraudulent scheme to procure said release, the defendant did represent to plaintiff's mother that plaintiff's principal witness was a man of disreputable character and could not be relied upon, and that said statement was known to be false at the time by the defendant; that the defendant knew that in order to accomplish his fraudulent purpose to secure the settlement of said suit, without paying to plaintiff any of the damages she had sustained, it was necessary for him to prevent plaintiff from consulting her attorneys, and that said defendant, intending fraudulently to keep her from seeking the

advice of her counsel, did falsely represent that they were unreliable and not to be trusted, and that it would not be safe for her to advise with them about said proposed settlement and release, and that it would be best for her interests for said settlement to be made without letting her attorneys know anything about it, and that Judge Alexander Martin was a mutual friend and not of counsel in the case, and could best advise her as to the proper course to pursue, although the defendant at the time well knew that Judge Martin was his attorney in the said suit; that defendant caused all of his aforesaid false and fraudulent statements to be communicated to the plaintiff; that plaintiff was a young woman wholly unfamiliar with legal methods and procedure, and that this was known to the defendant; that she was induced to believe and did believe defendant's said assertions to be true, and relying upon his statement that he had not spoken the slanderous words or any slanderous words about her and that her principal witness was a disreputable man, she was induced by reason of the influence which defendant had acquired over her not to consult her own attorneys, but at defendant's request went to his counsel without knowing he was defendant's attorney, and that said release was then and there prepared, executed and delivered by plaintiff; that the ten dollars referred to therein as a consideration therefor was never paid to plaintiff, nor was there any consideration for the same; that defendant knew that plaintiff had not heard him make the statement about her as aforesaid, but that she relied upon others to whom the statement was alleged to have been made, and that plaintiff would not have executed said release if she had known that defendant had spoken the slanderous words about her as aforesaid, and that defendant well knew this to be true and for that reason falsely and fraudulently caused her to believe, in the manner and by the means aforesaid, that he was innocent of the charge of having spoken said slanderous words about her;

that ten dollars were handed to the plaintiff's mother to pay the costs of said suit upon the dismissal thereof; that afterwards plaintiff learned for the first time, that the statements of defendant hereinbefore set out, and in reliance upon which she had executed said release, were false and fraudulent, and so known to the defendant at the time they were made, and were only made to induce her to execute said release, and that thereupon and before the institution of this suit, to wit, on the 30th day of January, 1893, plaintiff tendered to defendant the said ten dollars, together with interest thereon from the 5th day of April, 1892, and she now brings into court and again tenders to defendant the said sum together with interest thereon.

"Wherefore, plaintiff prays that the release hereinbefore set out, dated the 5th day of April, 1892, and signed by this plaintiff, be canceled, set aside, vacated and for naught held and for all proper relief.

"Plaintiff, for second count of her second amended petition, and for another and further cause of action, states that heretofore, to wit, on or about the 12th day of January, 1892, at the county of Boone and State of Missouri, it having been reported to E. C. Clinkscales, then the marshal of the city of Columbia, in said Boone county and State of Missouri, that a larceny of thirty dollars, or upwards, had been committed in the dwelling house of one George D. Purinton, in said city, he was, on the date aforesaid, and at the place aforesaid, approached by the defendant, who then and there entered into a conversation with said Clinkscales, touching and concerning said larceny, and did then and there, in the presence and hearing of said E. C. Clinkscales, maliciously, falsely and wantonly speak and publish of and concerning the plaintiff, the following false and slanderous words, that is to say: 'Purinton and I have talked that matter all over, and I told him that I knew that girl (meaning the plaintiff) had taken that money the minute I heard of its disappear-

ance; that everywhere she goes money disappears; she is an adventuress of the first water, and destined to become a crook,' then and there intending to charge and impute, and then and there falsely and maliciously charging and imputing to plaintiff the crime of larceny in a dwelling house, as aforesaid, and being then and there so understood by the said E. C. Clinkscales, as imputing to, and charging plaintiff with the crime of larceny in a dwelling house, as aforesaid, to her damage in the sum of twenty-five thousand dollars; in actual damages, in the sum of one thousand dollars, and in exemplary or punitive damages in the sum of twenty-four thousand dollars.

"Plaintiff further alleges that an action was commenced to recover damages upon the cause of action hereinbefore stated within two years after the alleged date of the speaking and publication of the words set out in this petition, and that said action so commenced was pending in the circuit court of Lincoln county, in the State of Missouri, on the 11th day of October, 1894, when a nonsuit was taken in said cause, and that this action was commenced, and the process therein served, on the 15th day of October, 1894, being within one year after said nonsuit was suffered.

"By reason whereof, plaintiff says she has been damaged in the sum of twenty-five thousand dollars, for which she asks judgment and for costs."

### ANSWER.

"The defendant comes, and, for his answer to the first count of the plaintiff's second amended petition, denies each and every allegation and averment therein contained, save and except as hereinafter specifically admitted. He admits that on or about the 5th day of April, 1892, pending a former action which the plaintiff had theretofore instituted against him on account of the alleged speaking of the words and charges set forth in said first count, she executed and deliv-

ered to him her certain release in writing, therein sought to be set aside, whereby she released and discharged him from all liability for and on account of the alleged speaking of the said words and charges but he avers and charges that said release was founded upon good and valuable considerations, to wit, the sum of $10 and a written statement of disavowal, whereby defendant denied the utterance and publication of and concerning the plaintiff, of the said words and charges, and disavowed the imputation to her of any guilt or offense implied in said words and charges; and he further avers that the plaintiff then and there accepted and received the aforesaid sum of $10, and the aforesaid written statement of disavowal by the defendant, as a full and complete consideration for the execution and delivery of said release. For his further answer to said first count of said petition, the defendant avers, that long after the execution and delivery of the said release therein set forth and sought to be set aside, the plaintiff, with full knowledge and information touching the several alleged matters and facts set up in said first count for the setting aside and cancellation of said release, acquiesced in and ratified the same, by then and there, with such knowledge and information as aforesaid, soliciting from the defendant, in connection with one E. C. Clinkscales, his further written statement of exoneration; that defendant, relying upon a full and complete settlement and discharge of any and all causes of action which the plaintiff might have theretofore had against him, did, then and there, on or about the 13th day of April, 1892, at the instance and request of plaintiff, in connection with the said E. C. Clinkscales, execute and deliver to plaintiff his certain further written statement, whereby he exonerated plaintiff from any guilt or offense implied in the words and charges theretofore alleged to have been uttered and circulated against her; and that the plaintiff then and there, with full knowledge and information as aforesaid, touching the several alleged matters and facts set

forth in the first count of her petition for the avoidance and cancellation of said release, accepted and received the aforesaid written statement of exoneration and caused the same to be published in the newspapers of the city of Columbia.

"For another and further answer to said first count of said petition, the defendant avers that the plaintiff's supposed cause of action therein set forth to set aside and cancel said release did not accrue within five years next before the institution of this action, or within five years next before the plaintiff obtained leave to institute the same, in this, to wit: that said release was executed and delivered, and thereafter and more than five years next before the institution of this action to set aside and cancel the same, and more than five years next before the plaintiff obtained leave to institute this action, she well knew, and was fully informed of the several alleged matters and facts set forth in the first count of her petition for the avoidance and cancellation of said release. Wherefore the defendant now pleads and relies upon the lapse of time and the statute of limitations in that behalf enacted in bar of this action.

"For his answer to the second count of plaintiff's second amended petition, the defendant denies each and every allegation and averment therein contained.

"For his further answer to said second count, the defendant avers that long after the time of the alleged speaking and publication of the words and charges therein set forth, the plaintiff, for and in consideration of $10, then and there to her in hand paid by the defendant, and his certain written statement of disavowal, then and there executed and delivered to her, whereby he denied the utterance and publication of the aforesaid words and charges, and disavowed the imputation to plaintiff of any guilt or offense implied in said words, by her certain release in writing duly executed and delivered to defendant on or about the 5th day of April, 1892, and which is now on file with the original answer in

Courtney v. Blackwell.

this cause, released, acquitted and discharged the defendant, from all liability for and on account of the matters and things set forth in said second count.

"Defendant further states that after the time of the alleged speaking of the words and charges, at the instance and request of the plaintiff, he furnished to her his written statements of disavowal and exoneration, which were published to her use in the newspapers of Boone county; and now having fully answered prays to be dismissed with his costs."

REPLY.

"Now comes the plaintiff, and for her replication to the amended answer of the defendant to the first count of her petition, denies each and every allegation in said answer contained.

"And plaintiff, for her reply to the second count of said amended answer, denies each and every allegation in said count contained."

Upon a trial had on the first count of the petition on November 11, 1897, the court entered the following decree setting aside and cancelling the release.

DECREE.

"Etta Hancock Courtney, plaintiff, vs. James S. Blackwell, defendant.

"Now on this day comes the plaintiff in person, and by her attorneys, and the defendant comes by his attorneys; and this cause having been heretofore submitted to the court upon the pleadings and proofs on the first count in plaintiff's petition, and by the court taken under advisement, and the court being now fully advised in the premises doth find the issue for the plaintiff; that the release signed by the plaintiff

and delivered to the defendant, and offered in evidence, was procured by fraud on the part of defendant.

"It is therefore ordered, adjudged and decreed by the court that the release set up in the defendant's answer and read in evidence in this cause be, and the same is hereby, annulled, set aside and for naught held, and that plaintiffs have and recover of defendant all costs of this cause, and have thereof execution. At the request of the defendant the court files the following special findings in this cause, which are in words and figures following, to wit:

### *Finding.*

"1st. That defendant, in order to induce plaintiff to enter into the same, falsely and fraudulently represented to her and her mother that he had not spoken the slanderous words charged, and that plaintiff relying upon the truth of such statements entered into, executed and delivered such release of her cause of action; that defendant afterwards admitted to plaintiff and others the speaking of the slanderous words, and the court finds as a fact that the representation of defendant, as an inducement to secure the compromise and settlement of the pending suit, that he had not spoken the words charged, was false, and was the controlling inducement that operated upon plaintiff in making the compromise.

"2d. That the cause of action in the first count of the petition is not barred by the statute of limitations.

"3d. That there was no such ratification of the settlement and compromise after the discovery of the fraud, by plaintiff, as to defeat her action to have the same set aside."

To which findings of fact and conclusions of law the defendant excepted at the time.

The cause then proceeded to trial on the second count, resulting in a verdict for plaintiff, upon which, on November 13, 1897, the following judgment was entered:

## Judgment.

"Etta Hancock Courtney, plaintiff, vs. James S. Blackwell, defendant.

"Now at this day come again the parties by their respective attorneys, as also doth the jury heretofore summoned and sworn to try this cause, who, after considering of their verdict, on their oaths do say, 'We, the jury, find for the plaintiff, and assess and award to her as exemplary damages the sum of seven thousand, seven hundred and fifty dollars ($7,750). Wm. Dinwiddie, foreman;' and the jury are discharged. It is therefore ordered and adjudged by the court that in conformity with the verdict of the jury herein the plaintiff have and recover of and from the defendant, James S. Blackwell, the sum of $7,750, so found as aforesaid for her exemplary damages, together with all costs of this cause, and have thereof execution at 6 per cent."

The statements of disavowal and exoneration referred to in the answer are as follows:

## "Statement of Disavowal.

"Whereas, it has been erroneously circulated and reported that I have uttered and spoken of Miss Etta Hancock certain words reflecting on her character for honesty, to the effect that she had taken money; that wherever she goes money disappears; and that she was an adventuress and was destined to become a noted crook.

"Now, therefore, I, by this note addressed to all whom it may concern, declare and state that I have never uttered or spoken the words aforesaid of Miss Hancock, and that I have never imputed or intended to impute to her, or to charge her with the offenses or dishonor implied in said words; and that I do not now impute or charge her with the offenses or dishonor implied in said words.

"James S. Blackwell."

*"An Exoneration.*

"We, the undersigned, hereby exonerate the young lady recently put in trouble on account of an alleged larceny, in January, and declare her as innocent of any such charge.

"E. C. Clinkscales,

"J. S. Blackwell."

The suit was instituted in October, 1894, upon the same cause of action stated in the second count of the foregoing petition, to which the defendant answered, denying generally the allegations of the petition and setting up as a defense the release aforesaid, set out in the first count of the present petition, to which defense the plaintiff replied setting up substantially the same facts stated in the first count of the present petition in avoidance thereof. Upon the issues thus formed, the case was tried as an action at law before a jury, resulting in a verdict and judgment for the plaintiff for $3,500, from which the defendant appealed to this court, where on the eighth of June, 1897, the judgment of the circuit court was reversed and the cause remanded, to be proceeded with in accordance with the opinion therein filed. [Hancock v. Blackwell, 139 Mo. 440.] In the opinion delivered by BURGESS, J., In Banc, and in which all the judges concurred, it was then ruled that: "The plaintiff should not under the circumstances be permitted to ignore the release and prosecute her action at law without first having the release set aside by a proceeding in equity for that purpose, either by original bill, or as the offer to refund the money was made before the commencement of this suit, by amending her petition so as to embrace a count for that purpose. . . . There was evidence tending to show that the release was obtained by fraud and there is nothing disclosed by the record which will preclude plaintiff from proceeding in

equity to set it aside, should the evidence be found to be sufficient by the court upon the trial of that issue."

Upon the return of the case to the circuit court, the plaintiff amended her petition as indicated in the opinion, the pleadings assumed their present form, and the case was proceeded with as directed, as appears from the record herein set out.

The errors complained of for reversal will be noticed in the order of their assignment.

### First Count.

1. The facts disclosed by the evidence sustain the material allegations of the first count of the petition, and that the evidence supports the finding of the chancellor thereon, is not disputed; but it is contended by counsel for defendant, that "the facts set forth in the special findings of the trial court, viz., that the defendant falsely denied having made the slanderous charges and thereby induced the plaintiff to dismiss her original suit, and enter into the settlement, are not sufficient to justify the setting aside of the release."

The argument in support of this contention is introduced by the statement that: "Under the special finding of facts all questions of undue influence, and as to the various grounds of fraud, such as the alleged concealment by defendant of the fact that Judge Martin was his attorney and the alleged misrepresentations as to the character of plaintiff's witnesses and attorneys, are eliminated, and a single question of law presented, namely, as to whether under the circumstances the defendant's denial of the utterance of the slanderous words was fraudulent."

This elimination, essential to the argument of counsel in support of their contention, is unwarranted, for it is well settled law that in equity cases, when the evidence is before us, we will review it, and determine for ourselves the correctness of the findings, and arrive at our own conclusions upon

the facts in evidence.   [Blount v. Spratt, 113 Mo. 48; Parker v. Vanhoozer, 142 Mo. 621; Hartley v. Hartley, 143 Mo. 216.]

The proposition of law upon which the argument is based is that "the plaintiff having brought an action against the defendant for the publication of this slander, knew what she could establish by proof, on this subject, and hence can not now complain of his denial of the publication as fraudulent."

The deduction drawn in this proposition is a palpable *non sequitur.*   It does not follow because the plaintiff had brought suit, that she knew what she could establish by proof.   No one knows, or can know beforehand, what he will be able to establish by proof; when the time and necessity for making it shall come, and when the knowledge of the facts to be proven rests in the mind and conscience of others. It may be conceded that if the plaintiff had known the real facts concerning the publication of this slander, and defendants connection therewith, or if she had stood upon an equal footing with defendant, with equal opportunities of obtaining such knowledge, and in a position to deal with him at arm's length in regard to the matter, then she could not be heard to complain of his misrepresentation, for then she could not say that she had relied upon those representations in making the release, and the authorities cited by counsel in support of their proposition would be in point.   But such was not the case; she did not know the real facts; she had simply been told by others that the defendant had uttered the slander.   From the very nature of the case she could not have had equal opportunity with the defendant in obtaining such knowledge, and she was not in a position to deal with him in regard to the matter at arm's length upon an equal footing. In fact, the defendant had by undue influence, totally disarmed her, when she was called upon to sign the malignant instrument, for which she received, not an exoneration from

the foul slander which he knew he had uttered against her, but a false disavowal, exonerating himself from the slander. The position she was in, is briefly but fairly stated in the following extract, slightly modified, from the brief of counsel for plaintiff.

"Defendant had been plaintiff's teacher. Their families were upon the most intimate terms. When she first heard of the slanderous charge against her, she immediately went to the man to whom she looked for advice and counsel, and sought defendant in his class-room. She proposed to send for her father. He advised against this and told her that he would protect and assist her in the matter. Plaintiff's mother had implicit confidence in the honesty and good faith of defendant. He seems to have acquired unbounded influence over her. He enlisted the mother in procuring a compromise of the daughter's suit, and she went so far as to inform plaintiff that said plaintiff would have to leave her home unless this settlement was effected.

"Notwithstanding he well knew at the time that he had uttered the slanderous words of which she complained, and had made the false accusation against her, yet, in order to induce her to sign a release of her cause of action, and to bring about a compromise, he asserted to her and her mother, that he had never spoken those words or made the charge, and in the most solemn manner called upon God to witness the truth of said statement. Plaintiff was invited, through defendant's efforts, to the home of his attorney, and the release was obtained from her in the absence of, and without opportunity for consultation with her counsel, she understanding from defendant, so she testifies, that she was to be advised by a disinterested lawyer. It is clearly shown that she was prevented, by defendant's efforts, from conferring with the attorneys who were representing her in the suit then pending.

"Plaintiff did not hear him speak the slanderous words, and it was further represented to her that the witness by whom she expected to prove the same was not reliable. She was induced by defendant under these circumstances to sign the release."

In Bussian v. Railroad, 56 Wis. loc. cit. 335, it was said: "We think that no release obtained from the plaintiff after an action has been commenced and counsel employed, in the absence of the plaintiff's counsel, and without his consent or knowledge, should bind the party unless the utmost good faith is shown on the part of the defendant in obtaining the same." This is doubtless wholesome doctrine. At all events, a release without adequate consideration, procured as this one was, by misrepresentations upon which plaintiff relied, after suit brought, in the absence of plaintiff's counsel, in the manner and by the means used for that purpose, as shown by the evidence, ought not to stand for a moment in a court of equity. [Hancock v. Blackwell, 139 Mo. loc. cit. 455; Bell v. Campbell, 123 Mo. loc. cit. 15; Berlien v. Bieler, 96 Mo. 491.]

2. It appears from the evidence that the only consideration plaintiff received for the release and dismissal of her suit was the $10 given to her mother to pay the costs, and the paper called a disavowal, which was not to be published, and was not published, but it seems the understanding was that the defendant was to give her another paper, which was to be published, and in pursuance thereof a few days afterwards he did give her the paper called "an exoneration," which was published. Counsel for defendant contend that by the acceptance of this paper she affirmed the release, and ought not now to be permitted to complain of it, because in the meantime she had heard some admissions of the defendant as to his utterance of the slander that shook her confidence in the integrity of his disavowal, as she admits in her testimony. This point was strenuously urged upon our con-

sideration when the case was here before. We were not then impressed with the force of it, nor are we now. When this paper was given her, she was still laboring under the same malign influences that operated on her when she signed the release. She had had no opportunity to consult with her counsel, or advise with any disinterested friend. She was on the eve of her departure to the home of her father, where she might hope for sound advice. As she says, she "didn't have time to think." This unconsidered act of the plaintiff, while she was still helplessly struggling in the web of infamy which the defendant had wound around her character, and subject to the same influences which had enabled him to procure the release, ought not and can not have such an effect.

3. The release was executed on the fifth of April, 1892. The amended petition upon which the case was tried, and hereinbefore set out, was filed on the first of October, 1897. The petition thereby amended was filed on the thirteenth of October, 1894. The answer of the defendant thereto in which he set up the release as a defense to plaintiff's action was filed at the November term, 1894. In due time thereafter, and before the thirteenth of January, 1895, the defendant filed her replication thereto, setting up the same facts contained in the first count of the present petition in avoidance of the release, and it was upon the issues thus framed that the case was first tried and came to this court. Upon this state of facts, it is contended that plaintiff's action to set aside the release as set up in this count of the amended petition is barred by the statute of limitations. This of course would be true, if this amended petition "set up a new claim not before asserted." [Buel v. Transfer Co., 45 Mo. 562.] But this amended petition does not "set up a new claim not before asserted." It sets up identically the same claim that was set up in this suit by the replication filed in January, 1895, and which was therein asserted for the purpose of obtaining practically the same relief upon the same

state of facts.    The only variation in plaintiff's claim is that prior to the amendment it was asserted in the replication, since the amendment it has been asserted in the petition. But it has at all times been continuously asserted in the case by the plaintiff ever since the replication of January, 1895, was filed.    It was because this same cause of action was not properly pleaded and therefore not properly tried, that the former judgment was reversed. In remanding the case we said this mistake might be corrected by amending the petition so as to embrace the matter set up in the replication in a separate count of the petition, as was done.    Of course this leave would not have been given if we had thought that the effect of the amendment would be to introduce a new cause of action into the case.    We did not think so then, and notwithstanding the able but technical argument of the learned counsel, we do not think so now.    To so hold we would have to leave out of view, one of the principal objects of allowing amendments, which is to prevent the running of the statute of limitations, and also to ignore the statutory injunction requiring that, in every stage of an action, errors that do not affect the substantial rights of the adverse party, are to be disregarded.    We find no error in the record for which the decree should be set aside.

## Second Count.

(a)    It is next complained that the court committed error in forcing the defendant to trial on the second count, pending the defendant's motion for a new trial on the first count of the petition and in excluding the release as a defense to the action on the second count.    It appears from the record that the decree on the first count was entered on the eleventh of November, 1897, and on the same day the defendant filed his motion for a new trial, and on the same day the cause, coming on to be heard on the second count, "before

Courtney v. Blackwell.

the introduction of any testimony on this branch of the case, the defendant interposed objection to the introduction of any evidence in the case, or to any proceedings whatever in the case, until there has been a final disposition of the case on the first count, both in this count and in the appellate court." The objection was overruled, defendant excepted, and the trial proceeded to judgment on the second count, on which judgment was entered on the thirteenth of November, 1897, as hereinbefore stated, and on the same day the defendant filed a second motion for a new trial upon both counts of the petition, setting up therein the same grounds for a new trial on the first count as in the first motion, and other grounds for a new trial on the second count. These motions coming on to be heard on the seventeenth of November, 1897, both of them were then overruled and defendant perfected his appeal. Under the Code separate causes of action, whether legal or equitable, arising out of the same transaction, or transactions connected with the same subject of action, affecting all the parties to the action, and not requiring different places of trial, may be united in the same petition if separately stated with the relief sought for each cause of action, so that they may be intelligibly distinguished. [R. S. 1889, sec. 2040.] When so united, separate trials may be had for each cause of action at the same or different terms of the court, as circumstances may require. But "the judgment upon each separate finding shall await the trial of all the issues." [R. S. 1889, sec. 2134.] If the course marked out by the statute had been literally followed in this case, this point would not have been in the case, for there would then have been no occasion or place for the first motion for new trial, and the whole case would have been covered, as it was intended it should be, and was in fact, covered by the second motion for a new trial. The evident purpose of the statute is, while providing for separate trials on each count, and separate findings and judgment

Vol. 150 mo—18

or decrees if need be, that they shall all be entered at the same time, and when so entered they constitute together the judgment which is "a final determination of the right of the parties in the action" [R. S. 1889, sec. 2206], and is the judgment which for good cause may be set aside, and a new trial granted [sec. 2206], and from which an appeal may be taken. [sec. 2246.] The statute does not contemplate a dismemberment of the action at any stage of the proceedings, whereby a part of it might be brought to this court and be pending here, while the other part of it was left pending in the circuit court. On the contrary its obvious meaning is that the whole case shall be disposed of in the trial court before it is in condition for appeal.

The only error we find under this assignment is the premature entry of the decree and as this was in no way prejudicial to the rights of the defendant, he ought not to be heard to complain of it. Of course the court did not err in refusing to permit the release to be given in evidence before the jury on the second count. With the issues to be tried by the jury on that count the release had nothing to do; it had already been taken out of those issues and had been tried by the proper tribunal, and if any error had been committed in that trial prejudicial to the defendant's rights he would have had the full benefit of it on this appeal, and plaintiff's judgment would for such error have been reversed.

(b) It is next assigned as error that the court permitted the witness E. C. Clinkscales to testify to the substance of a conversation between himself and Purinton, when the defendant was not present.

In the course of the examination of the witness Clinkscales for the plaintiff, he was asked, "Who did you get the information from, that induced you to think that the plaintiff was capable of doing a thing like that?" and he answered, "From Prof. Purinton and Prof. Blackwell."

On cross-examination of the witness, the following question was asked and answer given:

"Q. You say you got your information from Prof. Purinton and Prof. Blackwell, about this matter? A. Yes, sir.

"Q. Didn't you testify this a while ago: that when Prof. Blackwell came up to you on the street and began talking about this matter, didn't you say that you told him that you already had been thinking about getting this young lady off in a room, so that you could examine her? A. Yes, sir; I did."

After which the redirect examination proceeded as follows:

"Q. You had before that had a conversation with Prof. Purinton about this matter, had you? A. Yes, sir; and Prof. Purinton had told me all what Prof. Blackwell had said before that, and I knew what he had said to Prof. Purinton."

To this answer the defendant at the time objected for the reason that he was undertaking to detail a conversation with Purinton when the defendant was not present, and moved the court that the answer be stricken from the record. Which objection the court overruled, and to the action of the court in overruling his objection and motion to strike out this answer, the defendant at the time saved his exception.

The court said this witness could state from whom he got the information, and that he had got it, but not what Prof. Purinton said to him regarding it, as that was incompetent and would be stricken out. "Q. Did you get that information from any other parties than Profs. Blackwell and Purinton? A. No, sir; I never heard anybody else say anything against her."

This was the end of this evidence, and it is obvious upon its face that the court did not permit the witness to detail

the conversation between himself and Purinton, but on the contrary that everything therein contained beyond the giving of the source of information upon which he had predicated his belief was stricken out.

(c)    It is next contended the court committed error in permitting the plaintiff to testify over defendant's objections that she had been refused employment as a teacher on account of this charge.    The only specific testimony that she gave on this subject was "I applied for two schools and went home, and was told afterwards that was the reason I didn't get them   .   .   .    It was on account of these reports about me.   .   .   .    One of the directors told me that."    The inquiry was not prosecuted any further, and no special damages was shown or attempted to be shown by reason of the fact testified to, and as no damage was allowed by the jury on this account, or on account of any special damage, it is not seen how the defendant has been prejudiced by this evidence.

(d)    The defendant having offered the release as evi-. dence before the jury the court committed no error in instructing the jury that the same had been set aside by the court, and was no bar to the plaintiff's recovery.   The other instructions criticised  are the same as those given and approved  when the case was here before, and although again criticised, we are still of the opinion that the instructions presented the case fully and fairly to the jury.

(e)    On the question of damages the court instructed the jury as follows:

"5.    If the jury find for the plaintiff, in estimating her damages, they are not confined to the mental anguish endured, and the injury, if any, to her character, but if they find that the words charged were maliciously and wantonly uttered, they may, in addition thereto, assess against the defendant, by way of punishment to him, and as an example to others, such exemplary damages as the jury, in their judg-

ment, under all the evidence in the case, believe the defendant ought to pay, and in estimating such damages the jury may consider the pecuniary circumstances of the defendant and the position and influence of defendant in society, provided that the amount of damages assessed by the jury shall in no event, exceed the amount claimed by plaintiff in her petition.

"7. If the jury find for the plaintiff, and further find that plaintiff is entitled to exemplary damages, under the evidence in the case, their verdict should be in the following form:

"We, the jury, find for the plaintiff, and assess and award to her as exemplary damages, the sum of ———— dollars."

The jury did find for the plaintiff, and in so doing found that the defendant had published the slander with which he was charged and upon that finding the plaintiff was entitled to have actual damages assessed in her favor, the slander being of that character from which the law implies such damages. They also found, as is apparent on the face of the verdict, when read in connection with the instructions, that the slander had been wantonly and maliciously published, and it was also within their province to assess exemplary damages therefor in her favor. So that there was in fact a basis under the instructions for the assessment of both actual and exemplary damages. But by some mischance in the form of the verdict which was given to the jury no place was left therein for the separate assessment of the actual damages, and the whole was returned in a lump sum according to the form as exemplary damages. This was an error of form and not of substance, and as under the facts and circumstances of the case the assessment was reasonable and just, we do not think the judgment ought to be reversed for this error. Finding no error in the record for which the judgment of the circuit court should be reversed, the same is affirmed. GANTT, C. J., and SHERWOOD and MARSHALL,

JJ., concur ·in the opinion; ROBINSON, J., dissents; VAL-LIANT, J., also concurs in the opinion except paragraph 3 from which he dissents; BURGESS, J., absent.

### SEPARATE OPINION.

MARSHALL, J.—I concur in the foregoing opinion, and believe it is the only proper conclusion under the circumstances disclosed by this record, especially in view of the opinion in this case on former appeal, but in my judgment that opinion was erroneous in holding that the issue of fraud in the procurement of the release could not be raised in a reply to the answer setting up· the release.   In my opinion release is an affirmative defense, and when pleaded by a defendant the plaintiff can meet it in the reply by a plea of fraud in its procurement, and this is the rule prescribed by secs. 2042 and 2052, R. S. 1889.   The plaintiff may anticipate an affirmative defense of release by a count in his petition setting out the fraud in its procurement and asking its cancellation, but should not be required to do so, nor should a plaintiff be reverted to a separate bill in equity for such purpose, for the whole question can, logically, be determined, when the release is pleaded by the defendant, if it is pleaded, by an issue of fraud raised by the reply, and tried by the chancellor, before the action at law is tried.   For these reasons I think the opinion on former appeal was incorrect in not so holding, and in requiring the plaintiff to resort to a proceeding in equity or to amend her petition.   GANTT, C. J., SHERWOOD and BRACE, JJ., concur herein.

VALLIANT, J. (dissenting.)—The opinion of the majority of the court holds that the suit in equity set up in the first count of the amended petition is not barred by the statute of limitations, because the same facts were stated in a replication addressed to the answer to the original petition, which replication was filed before the cause was barred, but

which on the former appeal was by this court held to be ineffectual because it was a tender of an issue as one of the issues in a law suit to be tried by a jury. I respectfully dissent from the proposition that the equity count is not barred.

In the original petition there was but one count, which was an action at law for slander. In the answer it was pleaded that plaintiff had for a valid consideration executed a release which barred her action. The plaintiff met that answer by a reply stating facts which indicated that the release had been obtained by fraud, which reply concluded as follows: "Wherefore plaintiff says that the said release is fraudulent, void, and of no effect, and constitutes no legal defense or bar to plaintiff's action." Defendant filed a motion to strike out the reply upon the ground, among others, "that it attempts to raise issues triable solely in a court of equity." The court overruled that motion. And when the cause came to trial defendant demanded that that issue be tried by the court, but the court refused and submitted that with the other issues to the jury. Thus it will be seen that the plaintiff never intended to plead those facts in such a manner as to obtain the judgment of a court of equity upon them. The attention of her counsel was called to it by the defendant in his motion, and in his request for a trial by the court, but they refused to heed it and insisted upon adhering only to a verdict of a jury; the trial judge adopted their view, the cause was tried by a jury and they got what they contended for in that way.

This is not a case where they fail to state their cause in form sufficient to accomplish what they intended by their plea. They did not intend to present an issue to be tried by the chancellor; on the contrary when the defendant demanded that they should do so they resisted it. There was no inadvertence, oversight or accident; they knew just what they wanted and refused to take anything else. And when

the cause was here on a former appeal, counsel for plaintiff insisted that the facts stated in the replication made the release void and required no rescission by a court of equity. [Hancock v. Blackwell, 139 Mo. 440.]

Now after allowing the whole period prescribed by the statute of limitations to elapse while they were trying to obtain what they had no right to, that is, a rescission of a contract by a verdict of a jury, they insist that the hands of the clock must be turned back and they be allowed to do what they not only neglected but refused to do while the court of equity was yet open to them.

On the former appeal this court decided, and rightly so, that that reply was of no avail, and the learned judge who wrote the opinion made it clear that the plaintiff's relief from that contract of release could be obtained only in a court of equity. It was not there decided that the plaintiff could not in a reply invoke the equitable relief which she afterwards sought by an amendment to her petition. It was only decided that the reply as formed, tendered an issue in a law case to be tried by a jury and that that could not be done. If that reply had been in proper shape, in effect a bill in equity praying a rescission of the contract, it would have been entirely valid under our system of code pleading. It is insisted that amendments are allowed for the purpose of preventing a bar of the statute of limitations, and cases are cited to support that proposition. That means that the statement of the cause of action pending may be so amended, but not that a new cause of action may be added to another already pending and give the new suit the date of the old one. Amending a petition by adding a new and different cause of action leaving the original action standing as it was is in no sense an amendment of the pending cause. Such so-called amendments are not infrequent practice, but I know no authority for it.

Upon the argument it was contended that on the former appeal this court adjudged that the petition might be amended as it now appears, and that in so amending it the plaintiff was only following the directions of this court and that therefore the cause is not barred. But that is a misconception of the decision. The question of whether or not an equitable suit to be thereafter brought to set aside the release, was barred by the statute of limitations, was not before the court and could not have been decided. The facts now presented showing the suit in equity to be barred were not in the record in that case. It is not there decided that the plaintiff-could amend her petition in this way. There is at the close of the second paragraph a reference to the subject, but it is only inferential and to the effect that plaintiff could not ignore the release until a court of equity had decreed its rescission either through an original proceeding to accomplish that end or by adding a new count in the shape of an equity bill to her original petition; citing in support of the proposition Blair v. Railroad, 89 Mo. 383; Homuth v. Railroad, 129 Mo. 629, and Och v. Railroad, 130 Mo. 27. All of which cases cited sustain the proposition decided, that is, that the release is a bar until rescinded by a decree of a court of equity, but neither of them decide that a petition can be amended by adding a new cause of action by way of an additional count, to the original suit. There is a mere suggestion to that effect in Och v. Railroad, but it was a mere suggestion as in the opinion on the first appeal in this case. In the third paragraph of that opinion it is said "there is nothing disclosed by the record which will preclude the plaintiff from proceeding in equity to set it (the release) aside should the evidence be found sufficient," etc. These were mere suggestions, and they pointed as much towards an original suit as they did to an amendment of the old. There was no consideration given to the question of whether or not the old petition could be thus amended. If a separate suit

in equity had been adopted undoubtedly under the facts presented it would have been barred by the statute. Even admitting for the argument that there is any authority for adding another cause of action to a petition, the new cause so added is in no better condition so far as the statute of limitations is concerned than an entirely new suit filed.

The plaintiff can not claim to have been misled to her disadvantage by the former opinion in this case. When that decision was rendered her right to a suit in equity was already barred, and nothing then said could have revived it. The decision in that case was right on every point. The plaintiff has simply insisted on trying her case in a certain way and after the years have passed she finds that she has taken the wrong course and it is now too late to begin again.

In my opinion the judgment of the circuit court ought to be reversed.