Hancock v. Blackwell.

## HANCOCK v. BLACKWELL, *Appellant.*

### In Banc, June 8, 1897.

1. **Slander:** PRIVILEGED COMMUNICATIONS. The facts in a suit for damages for slander are reviewed and it is *held* that the slanderous words uttered to a police officer by a teacher concerning a young lady, charging her with having committed a certain larceny, are not a privileged communication even though a single utterance.

2. ———: RETRAXIT: RELEASE: BAR: PLEADING. Defendant was charged with having uttered to a police officer words concerning a young lady that were equivalent to saying she was a thief. Before the present suit was brought defendant signed a retraxit, and thereupon plaintiff, in consideration of the retraxit and the sum of $10 for the payment of the costs of a suit which had been previously begun, executed and delivered to defendant her release in writing in full satisfaction and settlement of all causes of action for all words and charges theretofore published concerning her by defendant. Afterward plaintiff was led to believe that defendant had obtained the release by false and fraudulent statements and thereupon repudiated the release, tendered him the $10, and brought this suit asking for $25,000 for slander. *Held,* that said release, until set aside, was a bar to this suit; and that before it could be maintained, either an original action in equity must be brought to set aside such a release

on the ground of fraud in obtaining it, *or*, as the offer to refund the money was made before the commencement of this suit, the same end could be reached by a separate count for that purpose in the petition in the slander suit.

3. ——— : ———. : BAR: TENDER. Where a paper, based upon an actual consideration, even though fraudulently and surreptitiously obtained, has been substituted for another, such paper will be a bar to an action on the other until set aside by a proceeding in equity; and in order that it may be set aside, a tender must be made of the consideration money.

4. ——— : IMPROPER EVIDENCE. In a suit by a young lady for damages for slanderous words spoken about her in which she is charged with being a thief and a crook, it is not proper to permit the defendant to be interrogated concerning his own family difficulties.

*Appeal from Boone Circuit Court.*—HON. JOHN A. HOCKADAY, Judge.

REVERSED AND REMANDED.

*Turner, Hinton & Turner* and *Norton & Avery* for appellant.

(1) The trial court should have sustained the defendant's demurrer to the evidence for the reason that the evidence only tended to show a single utterance of the alleged slanderous words, namely, to a public peace officer in the course of such officer's investigation of a recent larceny. *Clark v. Molyneux,* L. R. 3 Q. B. D. 237; *Blakeslee v. Carroll,* 29 Atl. Rep. 437; *O'Donaghue v. M'Govern,* 23 Wend. 26; *Grimes v. Coyle,* 6 B. Mon. 301; *Dale v. Harris,* 109 Mass. 193. (2) The release set up in the defendant's answer in this case was a completely executed contract, knowingly, voluntarily, and understandingly entered into by the plaintiff, and constituted an absolute legal bar to her demand, and in this action it was not subject to attack for fraud not inhering in its execution. *State ex rel. v. Jones,* 33 S. W. Rep. 23; *Och v. Rail-*

*road*, 130 Mo. 27; *Homuth v. Railroad*, 129 Mo. 629. (3) The plaintiff could not, on purely equitable grounds, rescind the contract of settlement and release without the aid of a court of equity. *Och v. Railroad*, 130 Mo. 27; *Vandervelden v. Railroad*, 61 Fed. Rep. 54. (4) Even if it should be conceded that one of the parties to a completely executed contract of release, could rescind such contract on purely equitable grounds without the aid of a court of equity, yet such right could not be exercised without first placing the adverse party in *statu quo*. *Jarrett v. Morton*, 44 Mo. 275; *Estes v. Reynolds*, 75 Mo. 563; *Robinson v. Siple*, 129 Mo. 208; *Lewis v. Land Co.*, 124 Mo. 672. (5) Even if the plaintiff originally had a right to avoid this release by timely application to the court of equity or otherwise, her conduct in obtaining from the defendant a second written statement of exoneration upon the faith of the compromise, and in using that statement and having it published in the newspaper, amounted to such an acquiescence in, and ratification of, the settlement as to preclude any subsequent repudiation. *Taylor v. Short*, 107 Mo. 384; *Nauman v. Oberle*, 90 Mo. 666. (6) The plaintiff's reply failed to state facts sufficient to avoid the release. *Powell v. Adams*, 98 Mo. 598; *Quinlan v. Keiser*, 66 Mo. 603; *Lewis v. The Land Co.*, 124 Mo. 672. (7) The evidence wholly failed to sustain the charge of fraud and undue influence in the procurement of the release. *Parker v. Marquis*, 64 Mo. 38; *Anderson v. McPike*, 86 Mo. 293; *Powell v. Adams*, 98 Mo. 598. (8) The defendant was entitled to a trial by the court of the issues involved in the validity of the release, and it was error to submit the whole case to the jury in a lump. *McFarland v. Railroad*, 125 Mo. 253. (9) The trial court admitted illegal and incompetent evidence on the part of the plaintiff concerning the family troubles of de-

Hancock v. Blackwell.

fendant. *State v. Gesell*, 124 Mo. 531; *McFadin v. Catron*, 120 Mo. 252; *Ephland v. Railroad*, 57 Mo. App. 147; *Reed v. Pelleiter*, 28 Mo. 173; *Fougue v. Burgess*, 71 Mo. 389; *State v. Grote*, 109 Mo. 345; *Goltz v. Griswold*, 113 Mo. 144.

*Odon Guitar, Webster Gordon* and *W. M. Williams* for respondent.

(1) The utterance of the slanderous words charged was not "a privileged communication" in "fact" or in law. *Liske v. Stevenson*, 58 Mo. App. 220; *Conroy v. Pittsburgh Times*, 11 L. R. A. 725. Appellant had no personal interest in the subject of the larceny, disclosed no fact connected with it, and without evidence assumed plaintiff's guilt, predicated upon the assumption of extraneous facts which he alleged to exist. Town on Slander, secs. 208, 209, note 1; Odgers on Slander, p. 304; *State v. Derry*, 20 Mo. App. 552. (2) It is insisted that the question of "privileged communication" could not be raised by objection to the testimony of the witness Clinkscales, and that under our "code of civil procedure" such defense should have been specially pleaded. R. S. 1889, sec. 2049; *Northrup et al. v. Miss. Valley Ins. Co.*, 47 Mo. 435; Town on S. & L., sec. 350, note 1. (3) The position assumed by appellant in the second point of his brief, "that an executed contract voluntarily and knowingly made, though procured by fraud and undue influence," can only be attacked for fraud inhering in its "execution," is unsupported by reason or authority. Fraud inhering in the execution of a contract renders it "absolutely void." It stands as though never made, and requires no rescission, in court or out, in equity or at law, to avoid it. *Och v. Railroad*, 130 Mo. 27; *Girard v. Car Wheel Co.*, 123 Mo. 358; *Lusted v. Railroad*, 71 Wis. 391; *Ryan v.*

*Gross*, 68 Md. 377; *Peterson v. Railroad*, 38 Minn. 511; *Railroad v. Denham*, 30 Mich. 128; *Bliss v. Peters*, 160 Mass. 447; *Williams v. Railroad*, 112 Mo. 463; *Finlay v. Bryson*, 84 Mo. 664; *Wright v. McPike*, 70 Mo. 177; *Parker v. Marquis*, 64 Mo. 38. (4) To the proposition "that plaintiff could not, on purely equitable grounds, rescind the contract of settlement and release, without the aid of a court of equity, we answer: *First.* The case was tried by the only tribunal in this State possessing "equity jurisdiction," the only question being whether in the trial of the cause it erred in the "manner of the trial." In the exercise of the jurisdiction conferred by the Constitution, the statute has provided in all cases, one form of action, and one form of pleading. *Second.* We hold that the question involved is simply one of "procedure," and in nowise involves the distinctions between "legal" and "equitable" rights. (5) The provisions of our code of civil procedure applying to all cases, are emphatic, and imperative, and confer the absolute discretion upon the trial judge to grant or refuse separate trials. R. S. 1889, sec. 2134; *McFarland v. Railroad*, 125 Mo. 253. (6) Fraud is "an issue of fact triable by a jury." *Kitchen v. Railroad*, 59 Mo. 514; *Weiser v. Welch*, 70 N. W. Rep. 438. (7) The case at bar is distinguishable from those cited by appellant in his brief, in this, that the replication not only sets up "fraud and undue influence," but also "want and failure of consideration." The only consideration for the release was the denial of the utterance of the words charged, contained in the so-called "retraxit" given plaintiff when she executed the release. The $10 mentioned was inserted in the release at the suggestion of Judge Martin to pay the cost in the case, and it is so stated in the release, and was so testified by Judge Martin. R. S. 1889, secs. 2090, 2131; *Williams v. Mellon*, 56 Mo. 262; *Greer v. Yosti*, 56 Mo. 307; Bishop on

Con., sec. 71.    (8)   Plaintiff repudiated the "release" as soon as she was advised of the fraud that had been practiced upon her, and at once instructed her counsel to reinstitute the suit, which was done at the October term of the Boone circuit court, 1892.  This tender was complete, defendant refusing to accept anything, or to consider the proposition of rescission.  *Berthold v. Rayburn*, 37 Mo. 586; *Westlake v. St. Louis*, 77 Mo. 47; *Deichmann v. Deichmann*, 49 Mo. 109; *Soap Works v. Sayers*, 55 Mo. App. 15; *Harwood v. Diemer*, 41 Mo. App. 48; *McManus v. Gregory*, 16 Mo. App. 375; *Lumber Co. v. Warner*, 93 Mo. 388; *Canda v. Wick*, 100 N. Y. 127.   (9)  There was no acquiescence or ratification of the settlement after the reiteration of the slander by the defendant.  The testimony shows that from that moment all communication and friendly relations ceased between the parties.   (10)  The extent to which the cross-examination may go, tending to discredit a witness, is "in the sound discretion of the trial court." *Shelby v. Claggitt*, 5 L. R. A. 606; *Muller v. Hospital*, 73 Mo. 242.

BURGESS, J.—This is an action for damages for slander brought by plaintiff to the October term, 1894, of the circuit court of Boone county.

The petition was in two counts.  The second count was dismissed before trial.  The first count, upon which the case was tried, is as follows:

"Plaintiff by leave of court first had and obtained, for her amended petition herein states that heretofore, to wit, on or about the twelfth day of January, 1892, at the county of Boone and State of Missouri, it having been reported to E. C. Clinkscales, then marshal of city of Columbia, in said Boone county, and State of Missouri, that a larceny of thirty dollars or upwards had been committed in the dwelling house of one

George D. Purinton in said city, he was on the date aforesaid and at the place aforesaid, approached by the defendant, who then and there entered into a conversation with said Clinkscales touching and concerning said larceny, and did then and there, and in the presence and hearing of said E. C. Clinkscales, maliciously, falsely and wantonly, speak and publish of and concerning the plaintiff, the following false and slanderous words, that is to say: 'Purinton and I have talked that matter all over, and I told him that I knew that girl (meaning the plaintiff) had taken that money the minute I heard of its disappearance; that everywhere she goes money disappears. She is an adventuress of the first water, and destined to become a noted crook,' then and there intending to charge and impute, and then and thereby falsely and maliciously charging and imputing, to plaintiff the crime of larceny in a dwelling house, as aforesaid, and being then and there so understood by the said E. C. Clinkscales as imputing to and charging plaintiff with the crime of larceny in a dwelling house, as aforesaid.

"By reason whereof plaintiff says she has been damaged in the sum of twenty-five thousand ($25,000) dollars, for which she asks judgment."

Defendant in his answer denies generally the allegations of the petition. The answer then avers that on or about the thirty-first day of March, 1892, plaintiff instituted suit in the circuit court of Boone county against defendant for the same cause of action here sued on, and that thereafter, to wit, on the fifth day of April, 1892, plaintiff in consideration of a written retraxit signed by defendant, and the sum of $10 for the payment of costs incurred up to date in said cause, executed and delivered to defendant her release in writing of that date in full and complete satisfaction and settlement of all causes of action and demands

against the defendant for any and all words and charges theretofore published of and concerning her by defendant, and that she thereupon caused her said action to be finally dismissed, and pleads the same in bar to this action.

Plaintiff filed reply to the answer in which she admits that she signed the release, but alleges that the same and her signature thereto were procured by fraud, falsehood and undue influence brought to bear on her by defendant, and that the same was wholly without consideration.

She denied that the $10 alleged in defendant's answer to have been paid her in consideration for said release, was ever received by her, and averred that the same was insisted in the release at the instance and suggestion of defendant's counsel, and not at her instance or request; that after the institution of the original suit the defendant had falsely denied the utterance of the slanderous words charged, and had thus induced plaintiff's mother and sister to believe him innocent, and to use their influence with plaintiff to effect a compromise of the case; that defendant had falsely represented that the plaintiff's principal witness was a man of disreputable character and not to be believed, and that her attorneys were related to such witness and were unreliable; that defendant had induced plaintiff to consult Judge Alexander Martin as a disinterested person on the subject of a compromise, when in fact Judge Martin had been employed as defendant's attorney. That under the influence and advice of defendant's counsel, and the statement by him that her principal witness was a "disreputable man," and the undue influence of her mother, she signed said release.

Defendant then filed his motion to strike out that part of the reply which pertains to the manner in

which the release was obtained for the following grounds:

"*First.* Because defendant's answer sets up in bar of plaintiff's action a release and settlement thereof entered into and executed by the plaintiff prior to the institution of this suit; and the plaintiff by the new matter in said reply seeks to avoid the operation and effect of such release on account of supposed false representations on the part of the defendant in the procurement thereof, but fails to state facts sufficient to constitute a rescission of such release.

"*Second.* Because said reply fails to state facts sufficient to entitle the plaintiff to rescind or repudiate said release.

"*Third.* Because said reply fails to state facts sufficient to constitute any fraud on the defendant's part in the procurement of said release.

"*Fourth.* Because said reply attempts to raise issues triable solely in a court of equity, and which are liable to prejudice and mislead a jury."

The motion was overruled, and defendant excepted.

The trial resulted in a verdict and judgment in favor of plaintiff for $3,500, from which the defendant, after unsuccessfully moving for a new trial and in arrest, appeals.

When the case was called for trial, defendant demanded that the issue on the release be first tried by the court, which the court refused to do, and the cause was proceeded with before a jury.

It appears from the evidence that in January, 1892, plaintiff, her three sisters and their mother, were living in Columbia, Missouri, having gone there from Chariton county, Missouri, in September, 1884, so that the daughters could attend the university.

Plaintiff graduated in 1890, but returned again

and entered for post-graduate work to fit herself for a teacher. During the different years that she was attending the university defendant was one of the professors, and plaintiff had several studies under him. During this time plaintiff and defendant, and the Hancock family, and the defendant's family became quite friendly.

In January, 1892, while plaintiff was visiting the house of Geo. D. Purinton, in Columbia, an amount of money was stolen from the house. Purinton put the matter in the hands of E. C. Clinkscales who was then city marshal of Columbia for investigation. Clinkscales testified as follows:

"On the 12th day of January, Blackwell stopped me on the street in front of Oppenheimer's cigar store and asked me 'How about the Purinton burglary?' I told him there was a loss of money up there, and I didn't know who did it, but I was doing my best to find out, and I began 'to pass on, and he said to me, 'You need not pull off from me that way; Purinton and I talked that matter over this morning at the chapel and I told Purinton I knew that girl had taken that money the moment I heard of its disappearance, and that this thing should be pressed home on her; it might save her from the penitentiary. She tells lies, and deceives her parents, and everywhere she goes money and valuables disappear.' He told me that only a few days prior Miss Hancock had in her possession some sort of a pin, that he seemed to think she had gotten dishonestly; when he asked her about it, she claimed to have gotten it from some party, and she had not told him the straight of it he found out afterward."

W. G. Barrett, also a witness for plaintiff, testified that in a conversation had by him with defendant

VOL. 139 mo—29

the defendant told him that he had told Clinkscales that they were a bad lot, and that he believed that the girl took the money, and that wherever she went money and property disappeared.

Defendant testified in his own behalf and denied having made any charge to Clinkscales against plaintiff, or that he made the statements attributed to him by the witness Barrett.

Plaintiff testified that "whilst she was a student at the university she became well acquainted with the defendant, and that his family and her own were on friendly and rather intimate terms. That in the early part of January, 1892, she was at George D. Purinton's house on the occasion when some money was stolen, and at that time accompanied the city marshal to the train for the purpose of pointing out a man she had seen leaving the house. That a day or so afterward Clinkscales charged her with the commission of the offense and threatened to arrest her; and that she immediately called on the defendant and asked his advice in the matter. That defendant advised her not to talk about the affair and promised to go on her bond in case she was arrested; and that during the next week or so she had several similar interviews with the defendant in which he gave substantially the same advice, and discouraged the idea of her suing Clinkscales or Purinton. That finally, in the latter part of January, she was informed by Clinkscales and Mr. Gordon that defendant himself had made the charges against her, and in consequence she brought suit against him in the latter part of March, 1892.

The evidence showed that the suit was compromised between plaintiff and defendant on the fifth day of April, 1892, and that she in consideration of a written retraxit signed by defendant and the sum of $10 for the payment of costs, executed and delivered to

defendant her release in writing in full and complete satisfaction and settlement of all causes of action for all words and charges theretofore published of and concerning her by defendant.   But the evidence tended to show that plaintiff was induced to execute the release by reason of fraudulent statements and representations made by defendant, and undue influence brought to bear upon her; and that before the commencement of this suit she offered to refund to defendant said $10 for the purpose of. rescinding the settlement and setting aside the release.   After the conclusion of the evidence defendant interposed a demurrer thereto which was refused by the court, and defendant duly excepted.

1.   It is insisted by defendant that the court should have sustained his demurrer to the evidence for the reason that the evidence only tended to show a single instance of the alleged slanderous words, namely, to a public peace officer in the course of such officer's investigation of a recent larceny.   That there was no evidence from which actual malice could be inferred, and in the absence of actual malice, the alleged statement under such circumstances was a privileged communication.

"Privileged communications are of four kinds, to wit, where the publisher of the alleged slander acted in good faith in the discharge of a public or private duty, legal or moral, or in the prosecution of his own rights or interests; anything said or written by a master concerning the character of a servant who has been in his employment; words used in the course of a legal or judicial proceeding; and publications duly made in the ordinary mode of parliamentary proceedings."   Townshend on Slander and Libel [4 Ed.], 296, note 3.

The occasion of the publication of the slanderous words, and the position of the person by whom made, under such circumstances, repel the presumption or

inference of malice which the law implies to a false and
injurious accusation when it is gratuitously made. But
even then the party may recover damages if able to
show that the slanderous words were spoken in express
malice.

There is nothing in this case, however, which
brings the publication of the slander within the rule
announced, although the slanderous words were first
spoken by defendant to a police officer who had the
power, and whose duty it was to arrest persons guilty
of infractions of the law. Defendant was not in the
discharge of any public or private duty, legal or moral,
nor in the prosecution of his own rights or interest
when he made the statements to Clinkscales with which
he is charged. He knew nothing personally of the
facts connected with the larceny, and was in no way
concerned therein any more than any other citizen who
desired to see the law enforced, so that whatever state-
ments he made to Clinkscales with respect to plaintiff
were merely gratuitous. He was not inquired of by
Clinkscales in regard to the larceny, nor did he com-
municate to him any fact in regard thereto, but made
the bold statement to him that he had told Purinton
that he knew the girl had taken that money the
moment he heard of its disappearance. Not satisfied
with this statement, he went further and said "she
tells lies, and deceives her parents, and everywhere she
goes money or something of value, jewelry and so forth
disappear. She has got a pin of some sort on her now
that she can't account for, can't tell where she got it.
She is an adventuress of the first water, and destined
to become a noted crook." There was nothing in the
circumstances connected with the publication of the
slanderous matter by defendant which would repel the
presumption of malice, or that would justify the con-
clusion that the utterances were privileged. Upon the

contrary the evidence tended strongly to show that the words were spoken in malice.

2.   The next question is with respect to the action of the court in overruling defendant's motion to strike out that part of plaintiff's reply to defendant's answer, in which it is averred that the release set up in the answer was obtained by fraud, and fraudulent representations.   It may be conceded that when a contract has been obtained from a person incompetent to contract or from a competent person by misreading, the surreptitious substitution of one paper for another, or has been obtained by some other trick or device an instrument which he did not intend to give, or where no consideration has passed for the release, that such fraud or want of consideration may be shown in a proceeding at law;  so that the authorities bearing upon that class of cases need not be further noticed in passing upon the question involved in this case.   The plaintiff admits that she signed the release knowing at the time what it was, its purpose and effect, but seeks to avoid its legal effect as a bar to this action upon the ground that she was induced to execute it by fraudulent representations, and undue influence.   When the release was executed by plaintiff it was, to all intents and purposes, a bar to this action until set aside in a direct proceeding in equity for that purpose, in which event the money received in consideration for the release must be tendered back and the defendant put in *statu quo*.   The rule is thus announced in *Cleary v. Electric Light Co.*, 19 N. Y. Supp. 951.   "The rule undoubtedly is, that where a party seeks to rescind the contract on the ground of fraud or imposition, he must tender a return of what he has received under it before he can maintain an action at law;  and, in an action in equity, he must at least tender a return by his bill of complaint."   The same rule is announced in *Insurance Company v. How-*

*ard*, 111 Ind. 544; *Gould v. Bank*, 86 N. Y. 75; *McMichael v. Kilmer*, 76 N. Y. 36; *Ryan v. Ward*, 48 N. Y. 204; *Coon v. Knap*, 8 N. Y. 402. So in *Vandevelden v. Railroad*, 61 Fed. Rep. 54, it was said: "In an action at law for personal injuries, a release intentionally executed by plaintiff for a money consideration, knowing the legal effect thereof, can not be attacked, or its effect as a complete bar avoided, by showing that plaintiff was induced to sign it by the misrepresentation of defendant's surgeon, who attended him, as to the permanent character of his injuries. The action, however, may be suspended while plaintiff brings an independent suit in equity to rescind the release for fraud." In *George v. Tate*, 102 U. S. 564, it was held that the remedy under such circumstances is by a direct proceeding to avoid the instrument. See, also, *Stuart v. Rector*, 1 Mo. 361; *Mitchell v. Parker*, 25 Mo. 31; *Kearney v. Vaughan*, 50 Mo. 284; *Och v. Railroad*, 130 Mo. 27; *Homuth v. Railroad*, 129 Mo. 629.

In such circumstances the issue of fraud should be tried by the court; and the evidence in order to justify setting aside the release should be clear and satisfactory, "such as will preponderate over presumption or evidence on the other side." 1 Bigelow on The Law of Frauds, p. 123. By proceeding this way the burden of proof rests on the plaintiff to establish the fraud by clear and satisfactory evidence, while in trying such an issue before a jury a preponderance of evidence is only required to set aside the release. The plaintiff should not under the circumstances be permitted to ignore the release, and prosecute her action at law without first having the release set aside by a proceeding in equity for that purpose, either by original bill or, as the offer to refund the money was made before the commencement of this suit, by amending her petition so as to embrace a count for that purpose. *Blair v. Railroad*,

Hancock v. Blackwell.

89 Mo. 383; *Och v. Railroad, supra; Homuth v. Railroad, supra.*

3. There was evidence tending to show that the release was obtained by fraud, and there is nothing disclosed by the record which will preclude plaintiff from proceeding in equity to set it aside, should the evidence be found to be sufficient by the court upon the trial of that issue.

4. While it was improper to permit Mrs. Hancock who testified as a witness for plaintiff, to state over the objections of defendant her opinion that defendant had not said the things charged against him, this was an error in favor of defendant of which he can not complain.

In the cross-examination of defendant, who testified as a witness in his own behalf, counsel for plaintiff, over the objections and exceptions of defendant, were permitted to interrogate him with respect to his domestic affairs; if his wife had not left his house at at his command, and if he had not written a letter during the lifetime of his father-in-law, stating to him that if he didn't make a full provision for his wife making her equal with the other children in the division of his estate, that he would place him in the asylum.

Defendant's domestic affairs have nothing whatever to do with this litigation, and whatever they may have been he was entitled to a fair and impartial hearing. This examination went far beyond the domain of legitimate inquiry, and should not have been tolerated.

It could have had no other effect than to prejudice the jury against the defendant, for certain it is that the inquiry threw no light upon the issues involved.

Other objections were made by defendant and overruled by the court with respect to the admission of evidence, but the objections were either sustained or properly overruled.

5. The action of the court in giving and refusing instructions is also criticised, but, with the issue involving the fraudulent procurement of the release by defendant eliminated from the case, they presented the case very fully, and with apparent fairness to the jury.

The judgment is reversed and the cause remanded to be proceeded with in accordance with this opinion. All concur.