MUNFORD et al., v. KEET, Appellant.

Division One, February 5, 1900.

1.  **Breach of Warranty:** ACTION.  A deed of trust which contains the active words "grant, bargain and sell" expresses such covenants under sec. 2402, R. S. 1889, as authorized the grantee to sue for damages for a defect in the title.

2. ———: DEFENSE: JUDGMENT: AGREEMENT TO SUE. The petition alleged that plaintiffs had been compelled to purchase an outstanding title to protect the title derived by them through a deed of trust executed by defendant. The outstanding title was derived from the purchaser at a sheriff's sale under a judgment rendered prior to the making of the deed of trust, but then pending on appeal, and afterwards affirmed. The answer pleaded that an investment company acquired the title of the execution purchaser, and agreed with the plaintiffs to prosecute this suit founded on a breach of the warranty, and agreed to pay the execution purchaser a part of the proceeds of the litigation, but paid no other consideration for his title. *Held*, that the answer pleads a good defense.

3. Civil Practice: STRIKING OUT DEFENSES: DEFAULT. Where an answer contains several defenses, and one or more of them are adjudged insufficient on motion to strike out, but those remaining if found true would defeat plaintiff's action, a judgment by default can not be entered against defendant.

4. ———: ———: ———: WAIVER: STATUTE: SECTION 2066. If one count of a petition or any separate defense set up in the answer is adjudged insufficient, such ruling does not affect the other counts of the petition or the other separate defenses, and if the counts or defenses remaining constitute a cause of action or a defense, there remain issues pending which must be tried, and judgment by default can not be entered against the party whose count or defense has been adjudged insufficient because he refuses to amend. But in such case, the pleader may amend the insufficiently pleaded matter, or may stand on the ruling of the court. If he amends, he can not have the court's ruling reviewed on appeal. If he stands on the ruling, the court can enter judgment against him only as to such matters as have been held insufficient, and then the ruling is reviewable on appeal. This is the true construction of section 2066, R. S. 1889 (sec. 621, R. S. 1899.)

Transferred from St. Louis Court of Appeals.

REVERSED AND REMANDED (*with directions.*)

*Massey & Tatlow* for appellant.

(1) The sheriff in selling the property under the execution, under which Maggie C. Baker obtained her title, was the agent of both plaintiff and defendant, owing a like duty to

each, and bound to protect the interest of all parties concerned.   Conway v. Nolty, 11 Mo. 74; Shaw v. Potter, 50 Mo. 281; Hollingsworth v. Shannon, 113 Mo. 508; Cole Co. v. Madden, 91 Mo. 585; State ex rel. v. Moore, 72 Mo. 285; Hardware Co. v. Building Co., 132 Mo. 454.   (2)   In this State a covenant against incumbrances is treated and held to be one of indemnity only. Kellog v. Malin, 62 Mo. 432; Ward v. Ashbrook, 78 Mo. 515.   (3)   Beyond all question the court committed error in refusing to permit the defendant to appear and participate in the trial on the assessment of damages, or in other words the writ of inquiry; to cross-examine plaintiffs' witnesses; offer evidence in mitigation of damages, and have same assessed by jury if he so demanded.   This ruling of the trial court in so construing sections 2214 and 2215, R. S. 1889, shows an utter disregard on the part of the court of the mode of procedure under the common law of England for centuries; and the repeated rulings of the highest and last court in this State for more than half a century, as well as the plain provisions of the organic law of our State. The effect of this ruling was to compel the defendant to stand in court with his mouth shut, and witness an *ex parte* proceeding of the court and the opposite side, in rendering a judgment against him without the right to introduce witnesses, cross- examine plaintiffs' witnesses, or to have a jury, or otherwise participate in the trial.   The mere statement of such a proposition is a demonstration of a most flagrant and gross error on the part of the trial court.   Witsell v. Waters, 18 Mo. 396; Roberson v. Lawrence, 26 Mo. 69; Frost v. Burton, 15 Mo. 620; Munford v. Wilson, 19 Mo. 669; Barclay v. Picker, 38 Mo. 143.

*T. J. Murray* for respondents.

(1)   The only question to be determined in this suit is: "Did the judgment lien referred to in plaintiff's petition ripen

into and become a paramount title to the one acquired from the defendant, and if so, was the price paid for the out-standing title, to prevent an eviction a reasonable sum and not more than the covenantor received when he sold the land?" Wheelock v. Overshire, 110 Mo. 100; Matheny v. Steward, 108 Mo. 73. (2) A vendee of land threatened with eviction may surrender possession to the holder of the paramount title and still maintain an action on his covenants of warranty. Lambert v. Estes, 99 Mo. 604; Tracy v. Greffet, 54 Mo. App. 562. (3) When used for the purpose of striking out any pleading or any portion thereof a motion is governed by the rules governing demurrers. Paddock v. Somes. 102 Mo. 226. (4) When a portion of defendant's answer was stricken out and he refused to file any further pleading he was in default. Sec. 2066, R. S. 1889. This section compels a party to a suit, when a part of his pleadings has been stricken out, to either plead over or stand in default; the word "may" in this case means must if the party wishes to remain in court. Spaulding v. Suss, 4 Mo. App. 549; Thompson v. Lessee of Caroll, 22 How. 434; Monks v. Strange, 25 Mo. App. 16; Tower v. Moore, 52 Mo. 120; Smith v. Wineland, 21 Mo. App. 387. (5) As the defendant was in default, the right of trial by jury to assess damages was waived. Section 2133, R. S. 1889; Tower v. Moore, 52 Mo. 118; State v. Steen, 115 Mo. 474; Baker v. Railroad, 107 Mo. 239; Railroad v. Randolph Town Site Co., 103 Mo. 470.

MARSHALL, J.—*Damages for breach of covenant of title.*

This cause was certified to this court by the St. Louis Court of Appeals under section 6 of the amendment of the Constitution, 1884, because BIGGS, J., deemed the decision of that court in this case to be contrary to the previous decision of that court in State to use v. Finn, 19 Mo. App. 560.

Briefly stated the question for determination is this: the plaintiff sues the defendant for a breach of a covenant of title, contained in a deed of trust executed by him, and seeks to recover six hundred dollars, alleged to have been paid to acquire an outstanding paramount title. The petition alleges that one Horine conveyed the property to the defendant in 1892, and in 1893 the defendant gave a deed of trust thereon to the National Loan & Investment Company of Springfield, to secure a loan of one thousand dollars. The deed of trust contained the words "grant, bargain and sale," thereby expressing the covenants covered by section 2402, Revised Statutes 1889. At the date of the conveyance to the defendant of the deed of trust there was outstanding a judgment of the Circuit Court of Greene County in favor of James Baker and against Horine for one hundred dollars, but an appeal, with a proper supersedeas, was pending therefrom. The defendant did not pay the debt secured by the deed of trust; and in March, 1894, the trustee foreclosed that deed, and one Halderman, secretary and general manager of the *cestui que trust*, became the purchaser at the trustee's sale, and during the same month Halderman conveyed the land to the plaintiff Helen C. Munford. Thereafter in May, 1894, the judgment against Horine, having been affirmed, the land was sold under execution issued thereon, by the sheriff, and Maggie C. Baker, the wife of James Baker, the plaintiff in the execution, became the purchaser. Mrs. Baker asserted title against the plaintiff herein, Mrs. Munford, and to protect the title Mrs. Munford claims to have paid Mrs. Baker six hundred dollars for her title acquired at the sheriff's sale, and then brought this action to recover that sum from defendant.

The answer of defendant is as follows:

"Comes now the defendant and for amended answer to plaintiff's last amended petition avers and states:

"That the plaintiffs have no interest in this case, and are not the real parties in interest, and not entitled to prosecute

said action, for the reason that they are neither the real party in interest nor the trustee of an express trust.

"And for another and further answer the defendant specifically denies that plaintiffs were compelled to and did purchase the said title mentioned in said petition from the said Maggie C. Baker, to prevent being evicted from said premises, but aver and charge that such title was purchased by the National Loan and Investment Association, and not by the said plaintiff as alleged in said petition, for the purposes hereinafter stated. And denies, further, that plaintiff or the National Loan and Investment Company paid $600 for such title, and denies further that $600, if so paid, was a reasonable or just price for such title, but avers and charges the facts to be as follows: [That the title so sold by the said Maggie C. Baker, if of any force and validity against the title conveyed by the defendant in this case to the grantors of plaintiffs (which the defendant does not admit), then such title was a mere naked title and was not worth the sum of $600, or anything like that amount, and was not worth to exceed $25; and that such title could have been procured by defendant in this case for that amount, if the plaintiff or the said investment company had notified and requested defendant so to do, instead of purchasing the same from the said Maggie C. Baker. That is to say, that the title of the said Maggie C. Baker was obtained by a sheriff's deed at a sale under a judgment against Horine et al., made at the May term, 1894, of this court; that said deed could easily have been set aside on a motion made in said cause by the plaintiffs at said term, at a small and trifling expense, and if plaintiffs had notified the defendant, defendant could and would have caused such sheriff's deed to Maggie C. Baker to have been set aside, and the lien of the judgment removed from off of said land, so as to leave the same free and clear from any lien, for a price not to exceed $125, by causing said sheriff's deed to be set aside and annulled, and by paying off said judgment and

costs.    That the facts with reference to the said sale are as
follows:    That said judgment was obtained by one James
Baker against one S. H. Horine and one —— Yates, on the
—— day of ——, 1892.    That in said cause the said Horine
and Yates took an appeal to the St. Louis Court of Appeals
and· gave a good and solvent appeal bond and caused said
judgment to be thereby superseded, as provided by statute,
pending said appeal.    That at the time of taking said appeal
the said S. H. Horine was a wealthy citizen of Greene county
and possessed a large amount of valuable property; that a
great deal of such property being of great value, after the
rendition of said judgment was conveyed by the said Horine
to various parties on abstracts showing the title free and clear
from any incumbrances, which judgment was omitted from
such abstracts for the reason that the abstractor understood and
believed that an appeal being taken and a supersedeas bond
given the same no· longer constituted a lien on the prop-
erty, but that the bond stood for and in the place of such lien.
That in truth and in fact the property mentioned in plaintiff's
petition was conveyed by the said Horine to the grantor of
defendant, and by defendant to the National Loan and Invest-
ment Company on the same abstracts, without any knowledge
of the fact that any such judgment was a lien on such property.
That after the affirmance of such judgment by the St. Louis
Court of Appeals, the said James Baker, knowing that the said
Horine had conveyed such property to various parties, on
abstracts as aforesaid failing to show the existence of such
judgment, and that said parties were not aware of the fact that
such judgment was a lien on the property, he, the said Baker,
not for the purpose of honestly obtaining satisfaction of his
judgment, but with the intent and purpose of wrongfully
obtaining title to a large amount of valuable property under a
mistake of the parties as aforesaid, caused said execution to
be issued and directed to the sheriff of Greene county, Missouri,
and carefully ascertained the amount of property so conveyed

as aforesaid, after the rendition of said judgment, by causing the records of Greene county, Missouri, to be duly and properly searched by the abstracter, and after procuring a list of property conveyed by the said Horine after the rendition of said judgment, delivered said list to the sheriff of Greene county and caused said sheriff to levy thereon, knowing full well that at the time of said levy said property was of the value of $15,000 or $20,000, and knowing full well that upon demand made to any one of the parties by either he or said sheriff said judgment would be promptly paid off and satisfied, and knowing full well that on the day of issuing said execution he could have had his claim allowed in the probate court of said county against the estate of one of the obligors in said appeal bond, which estate was pending in said court, and receive within a day or two the full amount of said judgment, cost and interest, he caused the said sheriff to levy upon such property and advertise same for sale, not with the intent and purpose of procuring satisfaction of said judgment, but with the wrongful purpose of obtaining title to such property. That the sheriff of Greene county without making any investigation or attempting to ascertain the value of such property, or without attempting to collect said writ off of the said Horine, or demanding payment of same, or without knowing what property he was levying upon or offering for sale, levied upon diverse and various tracts of valuable property, any piece of which was worth many times the amount of said judgment, and caused a sale to be made under said execution to the said Maggie C. Baker at the grossly inadequate price of $70. That a large amount of said property was lots in the city of Springfield, upon which were large and costly improvements, and that the balance of said property was farming land of the finest quality, in a high state of cultivation with valuable and permanent improvements thereon. That none of these facts were known to the sheriff or disclosed in the advertisement of sale, or known to any other parties, except

Maggie C. Baker and said James Baker, bidding at said sale, in fact there were no bidders at said sale except Maggie C. Baker, wife of the said James Baker; and she, the said Maggie C. Baker, bid at such sale through said James Baker and had full knowledge of all the above facts, and was assisting in procuring said abstract; and the said Maggie C. Baker understood and assisted in carrying out said scheme to obtain the title to said property, as aforesaid, and had full and complete knowledge of all the facts above and hereinafter detailed. That at such sale property to the amount of $15,000 or $20,000 was sold to the said Maggie C. Baker at the grossly inadequate price of $70. That it was the duty of said sheriff to have ascertained the value of said property, and to have so informed bidders by the advertisement thereof, and at such sale to realize something like a fair price therefor; and upon his ascertaining that he could not do so, it was the duty of the said sheriff, of his own motion, to postpone such sale and thereby to have prevented such an outrageous and unnecessary sacrifice of property; and that for the failure of the sheriff to do so on motion properly made to this honorable court it would have been its duty to have controlled and protected its process and prevented such a sacrifice of property by ordering the setting aside of said sale on proper terms. That notwithstanding these facts, and the fact that the sale was made at the May term, 1894, as aforesaid, with full knowledge of these facts and without notifying the defendant in this case, before the adjournment of said term of court, the plaintiffs caused the said Maggie C. Baker to give them a quitclaim to such land, during said term of court; that the only consideration paid to the said Maggie C. Baker was paid by said National Loan and Investment company; and the said National Loan and Investment Company entered into a certain written contract reciting that they had loaned plaintiffs $1,200 with which to obtain said quitclaim deed, and that this suit was to be prosecuted for and on their behalf; and that the quit-

claim deed so given by the said Maggie C. Baker recites a consideration of $1,200.   This defendant is informed and believes and so charges the facts to be that no actual consideration was ever paid to the said Maggie C. Baker, and the real consideration for same was an agreement between the said Maggie C. Baker and the said National Loan and Investment Company that the said Maggie C. Baker was to receive a certain proportion of whatever might be realized out of this suit against this defendant on said covenant.   That defendant never heard of said judgment nor the sale until after the bringing of this suit, and if he had been notified he would have caused same to have been set aside, the lien of the judgment removed off of said land, and that the said Horine stood ready at all times to join either plaintiff or defendant in said motion and to assist in the setting aside of said sale.]

"Wherefore, having fully answered, defendant says that plaintiffs are not entitled to recover in this case to exceed the reasonable cost incident to the setting aside of said sheriff's deed, together with the amount of said judgment, interest and cost for which same was a lien on said land."

Upon motion of the plaintiffs the circuit court struck out all that part of the defendant's answer embraced in the brackets. The court then asked defendant's attorneys "whether they desired to file an amended answer or stand upon the answer so filed."   The said attorneys informed the court "that they desired to proceed to trial on the part of the answer not so stricken out (saving exceptions, of course, to the action of the court in striking out part of said answer) which the court refused to permit," and held that the defendant must file a new answer, omitting the matter stricken out of the answer, or on failure so to do a default would be entered against the defendant.   The defendant refused to file a new answer, and thereupon the court entered an interlocutory judgment of default against him, and afterwards tried the case ex parte, refusing to allow the defendant to participate in any way in the

trial. The defendant properly saved exceptions to all the rulings of the court, and, after final judgment against him, appealed the case to the St. Louis Court of Appeals. A majority of the judges of that court held the ruling of the circuit court to be proper, under section 2066, Revised Statutes 1889, while Biggs, J., dissented, and the case was therefore certified here for the reasons above stated.

I.

The first question in this case is the proper construction of section 2066, Revised Statutes 1889. That section is as follows: "When a petition, answer or reply shall be adjudged insufficient, in whole or in part upon demurrer, or the whole or some part thereof stricken out, on motion, the party may file a further like pleading within such time as the court shall direct; and in default thereof, the court shall proceed with the cause in the same manner as if no such original pleading had been filed."

The learned circuit court and the majority of the St. Louis Court of Appeals held that when a petition, answer or reply has been adjudged insufficient, in whole or in part, on demurrer or motion to stike out, the party has only one of two courses to pursue, *first*, to refuse to amend, in which case a default must be entered against him, and, after a final judgment, appeal the case; or, *second*, to file an amended pleading, omitting the matter adjudged insufficient, in which event he waives the right to have the ruling of the court reviewed on appeal. The minority of the St. Louis Court of Appeals follow. the decision of that court in the case of State to use v. Finn, 19 Mo. App. 560, where it was held that where an answer contained a general denial, and also several special defenses, and the special defenses were adjudged insufficient upon demurrer, and the defendant refused to plead over and allowed judgment as to the special defenses, to go on demurrer,

the case was properly tried upon the general denial, and that the ruling of the court on the demurrer was open to review on appeal.

It will be observed that the point here involved was not directly decided in the Finn case. Here the proposition is that where an answer contains several defenses and one of them is adjudged insufficient on motion to strike out, and the defendant refuses to amend by omitting such matter, a judgment by default must be entered against him, notwithstanding the answer states other defenses, which if found true would defeat the plaintiff's action, and the ruling of the trial court can then be reviewed on appeal, or the party can amend, omit the matter adjudged insufficient, and thereby waive the right to have the ruling of the lower court reviewed. In the Finn case, when the special defenses were adjudged insufficient, the court tried the case upon the general denial, and upon appeal it was insisted that the ruling of the court upon the demurrer to the special defenses was not open to review, "because the defendants failed to except to the action of the trial court in the premises, and have furthermore waived the error, if any there be, by abandoning the second and third issues, and going to trial on the first alone." In the Finn case the trial proceeded upon the issues joined which had not been adjudged insufficient, and this was held not to be waiver of the right to have the ruling of the court reviewed on the issues adjudged insufficient, but it was not contended, as it is here, that the defendant had no right to be heard upon the issues not attacked because they had been united in the same pleading with defenses which were held insufficient. The counsel, the trial court and the court of appeals all proceeded in that case upon the idea that the case must be tried upon what remains of the pleading adjudged insufficient in part if enough remained to constitute a defense to the plaintiff's claim.

It is perfectly obvious that section 2066, Revised Statutes 1889, can not be literally construed without producing

legal absurdities.   For instance, it is therein provided that if a petition, answer or reply be adjudged insufficient in whole or in part upon demurrer, or the whole or some part thereof be stricken out on motion, "the party may file a further *like* pleading within such time as the court shall direct."   The adjective "like" is defined by Webster to mean "1. Resembling; having resemblance; similar.   2.   Equal; same in quantity, amount, or extent."   No one would contend that this section means that when a pleading has been adjudged insufficient, a similar pleading must be filed, for such a proceeding would not only be absurd but would amount to contempt of court.   Yet this is the literal construction of the statute.   The true meaning of the words "like pleading" is that they refer to a petition, answer or reply, as the case may be, which has been adjudged insufficient.   Or in other words if a petition, answer or reply has been adjudged insufficient, another petition, answer or reply must be filed, but it must not be "like" the petition, answer or reply which has been adjudged insufficient.   This section does not mean, however, that where a petition contains more than one count or an answer contains more than one defense, and one count of the petition or one defense of the answer is adjudged insufficient, the whole petition or the whole answer is thereby adjudged insufficient.   The judgment of the court only acts on the part of the petition or answer that is attacked.   The parts not attacked are not affected in such a case.   To hold, therefore, that section 2066 requires that when a part of a pleading is successfully attacked, the pleader must file an amended plea simply stating again what is already stated and has not been challenged or adjudged insufficient would be to require a perfectly senseless and useless proceeding.   For when the court adjudged the part attacked insufficient, such part, so far as that court is concerned, is eliminated from the pleading, and what remains unattacked would be the same whether stated in that or in any other pleading.   Or otherwise stated.

the pleading is then in the same shape it would have been if the part eliminated had never been stated in that pleading, or as it would be if an amended pleading was filed omitting the matter adjudged insufficient, and stating only that which had not been adjudged insufficient. If, therefore, a part of a pleading is adjudged insufficient, but there remains enough to constitute a good petition or answer, the issues so remaining must be tried just as if the parts eliminated had never been embodied in the pleading, and thereafter, upon proper exception, the ruling of the trial court as to the part eliminated is open to review in the proper appellate court. Of course if the *whole* pleading is adjudged insufficient or is stricken out on motion, no issue remains, and there is nothing left to the defeated party but to amend by stating something else and different from the matter theretofore adjudged insufficient, or else to stand upon the ruling of the court, let judgment go against him and appeal, after saving proper exceptions. The difference between the procedure where the whole and where only a part of a plea has been adjudged insufficient is manifest and rests upon common sense. The error of the lower courts in this case lies in not applying this meaning to the section of the statute under consideration.

Section 2066, Revised Statutes 1889, is a part of article V of chapter 33 which relates to pleading, and hence that section must be read in connection with the other sections of that article. It is a part of the Code of Civil Procedure, and being in *pari materia* with all the other parts of the code on the subject of pleading, it must be read with all such other parts, and must be construed as to harmonize and give meaning to all its parts, if possible. This is axiomatic. Reading it in this way the result is that section 2040 permits a plaintiff to unite in the same petition several causes of action, stating each cause in a separate count, whether the same be such as have been heretofore denominated legal or equitable, or both. Section 2049 permits the answer to contain a general or specific

denial of the facts stated in the petition, and also to set up any new matter constituting a defense or counterclaim. Section 2050 provides: "The defendant may set forth by answer as many defenses and counterclaims as he may have, whether they be such as have been heretofore denominated legal or equitable, or both. They must each be separately stated, in such manner that they may be intelligibly distinguished, and refer to the cause of action which they are intended to answer." Section 2052 permits the reply to contain a general denial of the new matter set up in the answer, and also, "any new matter not inconsistent with the petition, constituting a defense to the new matter in the answer."

Under these provisions of the code it has been the settled rule in this State ever since the decision in Nelson v. Brodhack, 44 Mo. 596, that a defendant may interpose as many defenses, stated separately, as he has, provided they are consistent with each other; that is, so long as proof of one does not necessarily disprove the other. Thus, in a suit on a note the defendant may plead *non est factum* and also payment or release, or in an action for slander, he may deny uttering the words and also plead that the thing charged is true. So a plaintiff may unite in his petition a count in equity asking a cancellation of a release of a cause of action, and a count at law asking damages upon the cause of action referred to in the release. (Courtney v. Blackwell, 150 Mo. 245; Ibid, 139 Mo. 440.) A petition may also contain two counts and if one count is adjudged insufficient and the other count is held good, the plaintiff can save his exception to the ruling as to the count held bad, go on and try the case upon the good count, and afterwards have the ruling on the count adjudged bad reviewed on appeal. (McKenzie v. Donnell, 151 Mo. 431.) The same is true of an answer which contains several defenses stated separately. If any one count of a petition or any separate defense set up in an answer is adjudged insufficient, such ruling does not affect the other counts of the petition or

Munford v. Keet.

the other separate defenses, and if the counts or defenses remaining constitute a cause of action or a defense, as the case may be, there are issues pending before the court which must be tried. In such cases the pleader may amend the insufficiently pleaded matters or may stand upon the ruling of the court as to them. If he amends he thereby submits to the ruling of the court, and can not afterwards have such ruling reviewed. But if he stands upon the ruling, the court can only enter judgment against him as to such matters as have been held insufficient, and if enough remains of the petition or answer to constitute a cause of action or a defense to a cause of action pleaded, the issues so remaining must be determined, and thereafter the ruling of the trial court will, on proper exceptions saved, be reviewed by the appellate court.

This is the true construction to place upon section 2066, and it effectuates the provisions of sections 2040, 2049, 2050 and 2052. A single illustration will show that this is the correct view to take of section 2066. A petition may contain several causes of action, stated in separate counts. An answer may contain several defenses and also a counterclaim, each stated separately. If the equity count in a petition or the counterclaim in an answer is adjudged insufficient, the count at law in the petition or the defenses in the answer still remain unattacked and not adjudged insufficient. A complete issue thus remains. If the adjudication as to the count in equity or as to the counterclaim compels the party to amend so as to omit such matters on penalty of a judgment of nonsuit or default for failure so to do, then a perfectly good cause of action or a complete defense would thereby be thrown out of court without ever having been attacked, tried or determined, and this too, because the plaintiff was held not to have some other cause of action or the defendant some other defense, and the plaintiff would have to risk his right to recover on his good cause of action or the defendant his right to defend on his complete defenses, in order to have a review of the ruling of

the trial court upon the count or defense adjudged insufficient. Such a construction of the statute leads to this result:    A trial court could always dictate what causes of action the plaintiff shall assert or what defenses a defendant shall make.    By adjudging one count of a petition (or even a part of a count) insufficient, the plaintiff could be compelled to amend and leave such count out of his petition, and if he does so the ruling of the trial court can not be reviewed; or else he must allow judgment to go against him on the good counts as well as the bad, and risk reversing the trial court's ruling on the bad counts.    The defendant is in even worse plight, for the plaintiff can amend by omitting the part or count adjudged insufficient and at once begin a separate action on these claims but the defendant can not thus go out of the front door of the court and come in again through the back door; he is in court against his will, and must make all his defenses then, in that suit, and can not avail himself of any he had in any subsequent proceeding.    If an adverse adjudication as to one defense compels the defendant to amend and omit such defense in order to secure a hearing upon the other defenses pleaded, then it follows that the trial court absolutely determines which defenses shall be set up, for no reasonable man would run the risk of allowing judgment to go against him on his good, unattacked defenses, in order to test the ruling of the court on those which were challenged and adjudged insufficient.    Neither did the law-makers ever intend by section 2066 to place litigants so completely or unreasonably in the power of the trial courts, for the policy expressed in section 2246 is that every person aggrieved by any final judgment or decision of any circuit court shall have a right to appeal to the proper appellate court in all cases not prohibited by the Constitution.

It was intended by section 2066 to provide that if the whole of a petition, or answer or reply was adjudged insufficient, the party should amend the whole pleading or judgment should go against him, and if only one count of a petition,

or one defense in an answer or reply was adjudged insufficient, the party should amend such count or defense or judgment should go against him as to such count or defense only, but it was never intended that when only one cause of action or one defense was adjudged insufficient, other causes of action or defenses contained in the pleading should be thrown out of courts without a hearing unless the party amended so as to omit the matters adjudged insufficient. ·

This is the first case of its kind, to which our attention has been directed, that has reached this court, and hence the first time this court has been called upon to adjudicate the question. The provisions of section 2066, Revised Statutes 1889, have stood upon our statute books in exactly the same words ever since 1855, where they appear as section 40 of article VI of chapter 128 Revised Statutes 1855, and this is the first case which has reached this court where the construction adopted by the trial court and sustained by the court of appeals has ever been contended for. The reports of our State contain many cases in which this court has reviewed the ruling of the trial courts in holding one count or one defense insufficient and where the defeated party has saved his exception and proceeded with the trial upon the counts of the petition or the other defenses of the answer which were not adjudged insufficient. This in itself is persuasive of the correctness of the construction here adopted. The answer in this case stated a good defense, if proved, to plaintiff's cause of action, even after the court had stricken out the part embraced in the brackets, and hence the trial court erred in entering a judgment by default against the defendant and in refusing to allow him to participate in the trial.

## II.

We are of opinion that the trial court also erred in striking out the parts of the answer embraced in the brackets. If

the National Loan and Investment Company, and not the plaintiffs, acquired the title of Maggie C. Baker, and afterwards made a written contract with the plaintiffs to prosecute this action for its benefit and agreed to pay Maggie C. Baker a part of the proceeds derived from the litigation, as is charged to be the fact in part of the answer stricken out, then it can not be true, as stated in the petition, that the plaintiff has been compelled to purchase or has purchased the outstanding title held by Maggie C. Baker, and hence the defendant can not be compelled to pay the plaintiff any sum not so expended by her. It will, of course, be admitted that James Baker had a right to have an execution issued on his judgment against Horine and to sell enough of Horine's property to satisfy his judgment, and likewise that Mrs. Maggie C. Baker had the right to acquire the title of Horine in the property sold, but the motion to strike out was not limited to the part of the answer setting out the alleged conspiracy of Mr. and Mrs. Baker, on the contrary it embraced the further allegations of the answer in reference to the National Loan and Investment Company having acquired the Baker title and alleged that no money was paid by even that company for the Baker title, but that Mrs. Baker was to be paid therefor out of the proceeds of this action. If the evidence supports this averment it would defeat the plaintiff's recovery. The motion to strike out embraced these averments of the answer, and the trial court erred in sustaining that motion.

It follows that the judgment of the circuit court must be reversed and the cause remanded to be proceeded with in accordance herewith. It is so ordered. All concur.