————O————

T. M. ARMSTRONG, Plaintiff in Error *vs.* CALEB WINFREY, Defendant in Error.

1. *Crimes and misdemeanors—Re-conveyance of land by grantor, made under belief that first conveyance is invalid—Constr. Stat.*—The simple making of a second deed while the former one is outstanding and in force, without reciting the same, does not constitute the offense prohibited by the statute (Wagn. Stat., 462, § 52) in the absence of any fraudulent intent. Thus, where one having made a conveyance, afterwards concludes that the same is invalid, and so re-conveys the land, the grantee being cognizant of the prior deed, and the transactions connected therewith, and there being no artifice or attempt to defraud on the part of the grantor, the latter is not amenable to the statute, although the first deed in fact conveyed a good title.

2. *Fraud, effect of on contracts.*—Fraud avoids all contracts, where it can be shown that if it had not been employed the contract would not have been made.

*Error to Cass County Circuit Court.*

*Boggess & Sloan*, for Plaintiff in Error

I. It is the making of "such second deed," etc., having previously made another, which is outstanding and in force, and omitting to recite such former in such subsequent deed, etc., "with intent to defraud," that is denounced in and prohibited by the statute.

A party having made a deed which has been duly recorded, and which was outstanding and in force, could hardly be held to have brought himself within the provisions of this statute by making a second deed of the same property, to a person who knew of the first, even if he failed to recite the former in such latter deed ; making the second deed under such circumstances could not possibly operate a fraud either upon the former or latter grantee, and certainly not upon any other person.

This statute has been in force in this State for more than thirty years; during all that time, and indeed, from the earliest history of the State, it has been the habit of our people, to make a first, second and even third incumbrance, by mortgages and deeds of trust, upon their real and personal property, and the right of such incumbrancers have often been before our courts and adjudicated therein. (Mullanphy vs. Simpson, 3 Mo., 592 ; S. C., 4 Mo., 319 ; James vs. Hughes, 20 Mo., 133 ; Helwig vs. Heitcamp, 20 Mo., 559 ; Mead vs. McLaughlin, 42 Mo., 198 ; Reid vs. Mullins, 43 Mo., 306.)

II. There is no evidence that it was agreed between the plaintiff and defendant that the first deed—the one to the Pacific Railroad—should not be recited in the one from plaintiff to defendant, nor that the recital was omitted on purpose, by plaintiff, with intent to defraud, or with any other intent, and even if the deed, (had such intent accompanied its execution) would have been contrary to good morals, public policy or the common law, yet unless it was agreed to be so made, and that agreement was part of the consideration for the execution of the notes sued on, or said notes were the consideration for such agreement, then the contract was not unlawful, and the consideration of the notes sued on is not corrupted thereby. (1 Bulstr., 38 ; Hob., 72 ; Dyer, 376 ; Broom Leg. Max., 6 Am. ed., t. p. 540, s. p. 704.) The presumption of law is always in favor of the legality of a contract. (Mittleholzer vs. Fullarton, 6 Q. B., 989 ; ib., 1022 ; Lewis vs. Davison, 4 M. &. W., 954, 657 ; Michael vs. Bacon, 48 Mo., 474 ; Howell vs. Stewart, 54 Mo., 400.)

*Russell Hicks*, for Defendant in Error.

Plaintiff knew that he had once sold the land in good faith, to the Rail Road, for a fair price ; that it had made valuable improvements thereon, located a depot on it, laid out an addition to the town of Pleasant Hill, sold lots to individuals, and that they had invested largely in improvements.

The contract was illegal, immoral, and against the policy of the law, and in consequence thereof no recovery can be had on the notes sued on. (Wagn. Stat., 462, § 52 ; Inhabitants of Worcester vs. Eaton, 11 Mass., 377 ; Chit. Cont., 677, 772 ; White vs. Franklin Co., 22 Pick., 186 ; 1 Cowp., 192.)

. Both may have supposed that no title passed by appellant's deed to the Pacific Rail Road, but each was bound to know the law, and the sale and purchase, if illegal, immoral, or against the public policy, can find no shelter under the plea of ignorance.

WAGNER, Judge, delivered the opinion of the court.

From the record it appears that in 1858, the plaintiff was the owner of twenty acres of land adjoining the town of Pleasant Hill, in Cass county, and that in the same year he sold and conveyed the same by deed of general warranty to the Pacific Railroad Company, and that the deed was duly placed upon record. The railroad company laid out an addition to the town on the tract of land, erected their depot thereon, sold lots, and in consequence it has become valuable. At the January term, 1870, of this court, a decision was rendered in the case of the Pacific Railroad vs. Seely, et al., from which the conclusion was deduced, that the deed from the plaintiff to the railroad company was inoperative, and conveyed no title, and that the real title to the land still remained in the plaintiff. Whilst laboring under this mistaken view of the purport of the decision in the Seely case, the defendant conceived the idea of purchasing from the plaintiff the twenty acre tract which had previously been conveyed to the railroad company. Several interviews were had between the parties, and the whole matter was canvassed ; both parties were equally

ly cognizant of all the facts, and finally a bargain was consummated, by which plaintiff agreed to sell to defendant, by quit-claim, the twenty acre tract previously sold to the railroad company, and a thirty-four acre tract of land lying in a different place, and also to assign to him a judgment against one McKisson, for about five hundred dollars. The consideration which the defendant was to pay for the whole was eleven thousand nine hundred dollars, to be paid as follows: two thousand dollars in money at the time; two thousand five hundred dollars on the first of April next ensuing, and the remainder in four equal amounts of eighteen hundred and fifty dollars each, to be paid respectively in three, six, nine and twelve months. In accordance with this agreement the plaintiff executed a quit-claim conveyance for the twenty acre tract, assigned the judgment, and gave a title bond obligating himself to make a conveyance for the thirty-four acre tract. The consideration has all been paid except the last two notes, which are the ones herein sued upon.

As a defense, the answer alleged that the transaction was illegal, and that there was a failure of consideration for the execution of the notes. On a trial before the court the judgment was for the defendant.

The only point in the case about which there is any controversy, is the sale and conveyance of the twenty acre tract. It is insisted, first, that that transaction was illegal, by the statute law of this State; and, secondly, that it was fraudulent and against public policy, and therefore an action will not lie upon it. The provision of the statute invoked to sustain this view, is the 52d section of the 3rd article in regard to crimes and punishments. (Wagn. Stat., 462.) The following is the section:

"Every person who shall make, execute or deliver any deed or writing for the conveyance or assurance of any lands, tenements or hereditaments, goods or chattels, which he had previously, by deed or writing, sold, conveyed, mortgaged or assured, or covenanted to convey or assure, to any other person, such first deed being outstanding and in force, and shall

not in such second deed or writing recite or describe such former deed or writing, or the substance thereof, with intent to defraud; and every person who shall knowingly take or receive such second deed or writing, shall, on conviction, be adjudged guilty of a misdemeanor."

The statute was obviously intended to prevent fraud, and its penalty is denounced against the making of the deed with a fraudulent intent. The simple making of a second deed, whilst a former one is outstanding and in force, without reciting the same, does not constitute the offence, if there is no intention to defraud, and the deed does not have that effect. There must be a fraudulent intent designed to operate to the injury or detriment of some person.

In the case of Gilmore vs. Cook (33 Mo., 25) which was an action on promissory notes given for the purchase money for land which had been conveyed to the defendant by a quit-claim deed, the defense was set up, that the plaintiff fraudulently concealed from defendant, at the time of the sale and conveyance, the fact that he had previously granted to the North Missouri Railroad Company the right of way through the land. At the trial it was shown that the deed to the defendants made no allusion to the prior grant, but it was proved that the defendants were fully aware of and had knowledge of that fact, and it was held that the matter set up in the answer constituted no defense; that a grantee, by quit-claim deed, who, at the time of his purchase, had notice of previous grant by his grantor, could not allege that he was defrauded on the ground that the notice was not of a particular kind, as by recital in the deed.

It is plain enough in the present case that there could have been no intention to defraud the defendant; for he was well acquainted with all the facts, and made the first proposition to purchase of the plaintiff. He thought he saw a chance for a speculation, and was willing to risk his money on the venture. It cannot be said that there was any design to defraud the Pacific Railroad Company, because its deed was on record—its rights were fixed, and the plaintiff had no power

Pinney v. Berry.

whatever to change them. The defendant, knowing of the existence of all these facts, could not be an innocent purchaser, and could not be defrauded. It is a familiar doctrine that no valid contract can arise out of a fraud, and that any action brought upon a supposed contract which is shown to have arisen from fraud, may be successfully resisted. Fraud avoids all contracts, where it can be shown that if it had not been employed the contract would not have been made. But the record does not disclose that there was any fraudulent representation whatever in this case. There was no artifice or trick resorted to for the purpose of circumventing the defendant; he appears to have been the most eager to consummate the transaction; he simply made a bad bargain. But the law will not assist an improvident purchaser, nor will it interpose where both the contracting parties are equally well informed of the actual condition of the subject matter of the contract.

There is nothing in the position advanced, that the contract was so palpably against public policy that it should be held void. If the plaintiff possessed any title to the property, he had the legal right to dispose of it. There was nothing illegal in his action, though, in a moral sense, the transaction reflects no credit upon him, nor on the members of his church whom he says he consulted before he made the sale.

The judgment must be reversed and the cause remanded. Judges Sherwood and Hough concur; Judges Vories and Napton not sitting.