ANNIE MAGNUSON, Respondent, v. CONTINENTAL CASUALTY COMPANY, Appellant.

Kansas City Court of Appeals, April 1, 1907.

1. **TRIAL PRACTICE: Equity: Release: Statute.** A petition counted on, first a policy of accident insurance, and second, a misrepresentation in securing a release; the answer in addition to a general denial pleaded the release and the failure to give notice; the reply put in issue the new matter and set up a waiver of notice. *Held,* the proceeding was one in equity as to the release and that issue should have been tried before the court before sending the case to the jury on the count on the policy and that section 654, Revised Statutes 1899, has no application to the case.

2. **RELEASE: Fraud: Evidence: Amount of Recovery.** The evidence relating to the misrepresentation in securing a release of an insurance policy for less than its face value is reviewed and held that while a representation that the plaintiff was only entitled to recover one-tenth of the face value was a mistake of law there is no evidence showing it was not an honest mistake and that plaintiff was under no compulsion to accept the opinion of defendant's agent in that regard.

Appeal from Jackson Circuit Court.—*Hon. James H. Slover,* Judge.

REVERSED.

*J. C. Rosenberger, Kersey Coates Reed* and *Manton Maverick* for appellant.

(1) The court erred in ignoring the equity count of the petition and in submitting the issues made by both the law and equity counts to the jury together. The pleadings presented no issue triable to a jury. The case was triable solely to the court. The petition is in

two counts, one at law and one in equity, and was evidently drawn by the pleader to conform to the practice as it existed before the enactment of section 654, Revised Statutes 1899. Hancock v. Blackwell, 139 Mo. 440; Courtney v. Blackwell, 150 Mo. 272; R. S. 1899, section 694; R. S. 1899, section 593; Blair v. Railroad, 89 Mo. 383; Och v. Railroad, 130 Mo. 27; Roberts v. Lead Co., 95 Mo. App. 581. (2) The demurrer to the evidence should have been sustained and the judgment should be reversed without remanding, because the undisputed evidence shows that the release and settlement were free from the taint of fraud.

*Jamison, Elliott & Ostergard* for respondent.

(1) Where there is but one cause of action, and where only one recovery can be had, the plaintiff may state it in different counts in the petition for the purpose of so varying the form of the statement as to meet any possible state of the proof. Hess v. Gansz, 90 Mo. App. 439; Burbridge v. Railway, 36 Mo. App. 669. (2) Although section 654, Revised Statutes 1899, provides for the submission of the issue of fraud in obtaining a release to the jury whenever such issue is made up by answer and reply, yet this is not in abrogation of the general rule of pleading that a defense may be anticipated by averment in the petition and the issue thereon made up by petition and answer. The main provision of the section is that such issue of fraud in the obtaining of a release shall be submitted, with all the other issues in the case, to the jury. It makes void, as a matter of law as well as of equity, such a release procured by fraud. To say that it is void at law only when the fraud is put in issue by answer and reply is not a proper construction of the statute. Lomax v. Electric Co., 106 Mo. App. 551. (3) The second count of the amended petition is not addressed to the equity powers of the court

BROADDUS, P. J.—The plaintiff is the beneficiary in an accident policy issued to her son, Edward Magnuson. On the fourth of July, 1903, the said Edward, the insured, was celebrating the day with a pistol and blank cartridges. By accident the pistol was discharged and the wad of the cartridge entered the palm of his left hand inflicting a punctured wound.. He went at once to a neighboring drug store where a drug clerk, who was a medical student, probed the wound, but did not find the wad. On the following day he went to Dr. W. H. Leonard, who probed the wound also, but did not find the wad. The wad which was of the diameter of a lead pencil remained in the wound for twelve days when it was removed by Dr. Kestler. In the interim the wound had become aggravated and symptoms of tetanus appeared, and on the twenty-third of July he died.

Plaintiff's suit is to recover the amount of the benefit provided for and in addition there is a count in the petition setting forth that A. A. Smith, an agent of the defendant, falsely and fraudulently represented to plaintiff that the cause of the death of said Edward was such as to bring it within an exception clause of said policy, whereby the defendant became and was liable only for the payment of one-tenth of the full benefit, to-wit: one hundred and fifty dollars, the full benefit being fifteen hundred dollars. That plaintiff being old and simple of mind, and relying on said representations of said agent, Smith, did agree to and did receive a check from him for the sum of one hundred and fifty dollars in settlement of her claim for said benefit. She prays that the transaction be set aside.

The answer is a general denial and by way of special defense pleads said settlement, and the failure of plaintiff to give defendant notice of the accident to the insured within fifteen days thereafter as provided by the policy. Plaintiff's reply put in issue the new matter in defendant's answer and pleaded specifically that

the failure of plaintiff to give said fifteen days' notice was waived by defendant.

In the policy there is a provision to the effect that, "In case of loss of life, limbs or sight, as above provided, from unnecessary exposure to danger or to obvious risk of injury, or from any narcotic, infection, poison . . . . the limit of the company's liability shall be one-tenth the amount which would otherwise be payable under the policy, anything herein to the contrary notwithstanding; payable within thirty days of receipt of satisfactory proofs thereof. . . "

The evidence of A. A. Smith, the secretary of defendant, who came to Kansas City on August 29 and saw plaintiff at her home in said city, was that in conversation with her she told him about the manner of her son's death, and that he asked her to come to the Midland hotel in the afternoon and bring her husband, or some member of her family, or some business friend in whom she had confidence who was familiar with the English language and business affairs, the plaintiff being a Swede and somewhat unfamiliar with said language. Smith's testimony was to the effect that he called plaintiff's attention to the fact the company had not been notified of the accident within fifteen days after it occurred as provided by the policy; that her excuse was that she was sick, worried and did not think of it; that she came to the hotel in the afternoon with her son and husband; that he stated to them his reason for wanting to see them was because he wanted to know why the company had not been notified as required by the policy; that the failure to give such notice relieved the company from all liability. She gave the same excuse as that given when he saw her at her home; that he then told her that if the notice had been given as required she could not have recovered more than one-tenth of the principal sum under the clause of the policy covering infection

125 App—14

and surgical treatment.   At this point in his testimony, he was asked from whom he got the facts with reference to the cause of the insured's death.   To which he answered, "From Mrs. Magnuson, and the proof filed by her, and from a personal interview with Dr. Kestler;" that he denied any liability whatever and that he compromised the matter for one hundred and fifty dollars on the ground of the failure of plaintiff to give notice of the accident as required, as that was the only amount to which she would be entitled had she given said notice; that he told her and those who were with her if they were not satisfied with his offer and the correctness of his position as to the liability of the company to take the advice of a good attorney; that he was on his way to Denver and could come back the latter part of the week and in the meantime they could consult a lawyer; that plaintiff after some conversation with her husband and son in a foreign tongue reluctantly agreed to accept the one hundred and fifty dollars; that he wrote out a check for that amount and gave it to plaintiff and she signed the release; and that the first notice defendant received of the accident was on the twenty-fifth of July, more than twenty days after it occurred.

Oscar Magnuson, who seems to have had the most to do with the settlement at the hotel testified that: "Smith introduced himself and told us who he was, and what purpose he had come for, and also asked why we hadn't give notice to the company;" that then his mother made a remark that she had been sick and had not thought of the matter, and that then Smith said it was customary where notice was not given that the company "overlooked the matter and usually made no argument on that point, and he dropped that matter and went on and explained, we were only entitled to one-tenth on the policy because the death wasn't directly caused by the gunshot wound but by an infection that set in later, and also gave us three or four illustrations showing

why we weren't entitled to more than one-tenth of that amount." We have stated the evidence of defendant's witness first for convenience, as it goes to show that the basis of the settlement was the amount that plaintiff would receive even if she had given the required notice, if the insured had died from infection. The witness, Oscar, is corroborated by the other members of the family present. He goes into detail of the illustrations used by Smith to enforce his argument that plaintiff was only entitled to one-tenth of the full benefit. The judgment was for plaintiff and defendant appealed.

The first error complained of is the action of the court in submitting the whole case to the jury and not granting defendant a trial before the judge upon the issue as to whether the settlement and release was obtained by fraud, it being a matter cognizable in equity only. Section 654, Revised Statutes 1899, provides that: "Wherever a release, composition, settlement or other discharge of the cause of action sued on shall be set up or pleaded in the answer in bar to plaintiff's cause of action sued on, it shall be permissible in the reply to allege any facts showing or tending to show that said release, composition, settlement or other discharge was fraudulently or wrongfully procured from plaintiff, and the issue or issues thus raised shall be submitted with all the other issues in the case to the jury, and a general verdict or finding upon all the issues including the issue or issues of fraud so raised shall be sufficient."

We are not aware that there has been adjudication upon the question raised here. But we are of the opinion that the statute in question was not intended to relate to an issue of the kind which is raised in the petition. This proceeding was in so far as the question of fraud was concerned a proceeding in equity from the beginning, invoking the power of a court of equity to set aside and cancel said release. Prior to the adopt-

ion of said section, the practice was when any of the matters mentioned therein was set up as a bar to plaintiff's cause of action, which the reply alleged was obtained by fraud, the issue as to fraud was first tried by the court sitting as a chancellor before any trial could be had upon the law action set out in the petition. [Courtney v. Blackwell, 150 Mo. 245; Hancock v. Blackwell, 139 Mo. 440; Och v. Railroad, 130 Mo. 27.] The intention of the Legislature was to obviate the necessity of trying such a cause before two different tribunals and to try all the issues at the same time. The statute does not refer to cases like the one at bar where the fraud is set out in the petition and the arm of a court of equity invoked. The court was therefore in error in submitting all the issues to the jury.

If the cause is to be retried by a chancellor, many of the questions involved in the appeal perhaps would not be presented, but we deem it advisable in the interest of both parties to pass upon the question whether the plaintiff was entitled to recover on the evidence. The testimony on both sides went to show that said Smith, the defendant's adjuster, at and prior to the time of the execution of the release made no fraudulent representations whatever to plaintiff except that may be considered false, in which he told her that the company under its policy was not liable to her for a greater sum than one-tenth of the full benefit, because the insured's death was not caused directly by the gunshot wound but was the result of tetanus produced by infection. They all practically say that he told them not to take his word for what he said to them, but to take time and consider the matter; and that he was going to Denver, but would return, and that in the meantime she employ a good lawyer and be governed by his advice. But plaintiff rejected his advice and settled the business on her own judgment and that of her son and husband and executed the release.

While we are satisfied that what Smith said about the plaintiff's right to only one-tenth of the full benefit of the policy because her son had died of tetanus superinduced by infection and not directly by the shot in the hand, was not true as a proposition of law, yet he may have believed that it was true and his advice to plaintiff to get a good lawyer and ascertain for herself whether he was right, and to take time and consider the matter, is evidence of the most persuasive character that he was honest in what he said and did. At the trial defendant persisted in the theory that it was only liable for one-tenth of the full benefit on the ground as stated, and its counsel both by brief and oral argument have most persistently endeavored to convince the court of the correctness of its petition on the question. At most, the representations of defendant's agent were in the nature of the expression of an opinion and not the misrepresentation of facts.

The plaintiff was not bound to accept the opinion of defendant's agent. She should have employed a lawyer as he had advised her to do. [Ordway v. Insurance Co., 35 Mo. App. 426; Armstrong v. Winfrey, 61 Mo. 354.] But we suppose upon this question there can really be no difference of opinion; it is therefore useless to multiply authorities.

Treating the case as one in equity, we find no difficulty in coming to the conclusion that there was no fraud practiced by Smith, defendant's agent, and that plaintiff was not entitled to recover.

The cause is therefore reversed. All concur.